249 A.2d 896.

GEORGE J. D'ANDREA, JR. *vs.* MANPOWER, INC. OF PROVIDENCE.

JANUARY 31, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This original petition for compensation benefits was denied by a trial commissioner on the ground that the injuries had not arisen out of and in the course of the petitioner's employment with the respondent. On appeal, with one commissioner dissenting, the full workmen's compensation commission affirmed. The case is here on the employee's appeal.

The pertinent facts as found by the commission are not disputed. The petitioner, then aged 18, graduated from high school in June of 1966, and pending his matriculation at college in the fall of that year was employed as a ware-

house laborer by respondent, a concern engaged in the business of supplying employees of various types to other persons or corporations. As such it is considered and deemed a general employer within the provisions of G. L. 1956, §28-29-2 (d), as enacted by P. L. 1960, chap. 182, §1. That act provides that a "general employer" is a person who for consideration and as the regular course of its business supplies employees to another person, and that a "special employer" is a person who contracts for services with a general employer for the use of such employees. It further provides in sub-section 3 thereof that

> "Whenever there be a general employer and special employer wherein said general employer supplies to the special employer an employee and the general employer pays or is obligated to pay the wages or salaries of such supplied employee, then and in that event notwithstanding the fact that direction and control shall be in the special employer and not the general employer, said general employer, if it be subject to the provisions of the workmen's compensation act or has accepted the same, shall be deemed to be the employer as set forth in paragraph (a) of this section."

The petitioner was hired by the general employer and the place of his employment was the warehouse of a large retail establishment. He reported for work on July 20, 1966, and presented the special employer's warehouse foreman with the work slip given him by respondent. That slip included the statement: "It is understood that the undersigned will not authorize Manpower, Inc. employees to operate automotive or truck equipment without prior written consent from Manpower, Inc." His work hours were from 8:30 to 5 Monday through Friday with one half hour lunch period between noontime and 12:30 p.m., and his work consisted of "Mainly unloading stock from trucks that were coming in, and storing it in the warehouse." On August 3, 1966, at about 12:25 p.m. he was injured when the

forklift truck he was then operating toppled over and fell upon him.

The respondent defends on the ground that at the time of his injury petitioner was operating a forklift truck in violation of its orders and rules limiting the scope of his employment and that he was thereby placed outside of the course of that employment. In support of that position respondent says that prior to commencing work both petitioner and the special employer had been advised that he was not to operate any automotive equipment in connection with his duties; that on learning that petitioner had been operating a forklift truck in violation of those instructions it again on July 29, 1966 instructed him not to operate automotive equipment; and that as late as August 1, 1966, only two days before the injury, it instructed the special employer's foreman to whom petitioner was responsible not to allow him to operate the forklift truck.

On these facts before the commission and before us, the parties joined issue on whether petitioner's disobedience of the general employer's express prohibitions constituted misconduct sufficient in law to justify a denial of compensation benefits. The commission resolved the issue by finding that petitioner's misconduct was disqualifying. In making misconduct the crucial question, the parties as well as the commission apparently ignored the evidentiary gap which exists concerning the nature of petitioner's activities at 12:25 p.m. on August 3, and whether he was then engaged in furthering his employer's interest. Because they treated the case, however, as if it turned on misconduct, rather than on the nature of the employee's activities at the time he sustained his injuries, we will consider the misconduct issue before discussing the other, and in our judgment the decisive, question.

Although the effect of an employee's misconduct on his right to compensation is apparently a novel question in this

state, it has frequently arisen elsewhere, and there is seeming agreement among the authorities upon the guiding principles. See 1A Larson, *Workmen's Compensation Law*, §31, pp. 459-478; Annotations, "Workmen's compensation: injury received while doing prohibited act." 23 A.L.R. 1161; 26 A.L.R. 166; 58 A.L.R. 197; 83 A.L.R. 1211; 119 A.L.R. 1409. The authorities, of course, agree on an employer's right to make rules and regulations governing the conduct of his employees within the sphere of their employment. And it is clear also that compensation benefits will not necessarily be denied because the injury for which they are sought was sustained while the employee was engaged in prohibited conduct. Where the cases divide is on whether or not the prohibited activities constitute a departure from the course of employment. The division line is sometimes fine and in the view of one court "illusive." *Green* v. *De-Furia*, 19 N. J. 290, 295, 116 A.2d 19, 22. On the one side are the cases where the injury occurred while the employee was using a prohibited method in the performance of his regularly assigned duties; on the other side are the cases where the employee was injured while engaging in activities which themselves were prohibited. Thus, injuries are said to arise out of and in the course of employment, even if sustained as a result of misconduct, provided that the prohibition violated related to the method of the employee's accomplishment of his assigned duties; it is otherwise, however, if the order disobeyed involved a prohibited overstepping of the bounds of his employment or doing something he was not employed to do, as for example, if an employee were to have engaged in prohibited personal activities during working hours.

*Larson, supra,* at §31.22, page 469, gives examples of the kinds of forbidden conduct which relate only to the method or manner of doing the job and have not, therefore, barred the injured employee from recovering compensation bene-

fits. Among them he includes cases where the employee was injured or killed in the course of using wood alcohol to light a fire, *Kolaszynski* v. *Klie,* 91 N.J.L. 37, 102 A. 5; operating a meat-grinding machine with the guard removed, *Kilgore* v. *Fragola,* 14 A.D.2d 612, 218 N.Y.S.2d 146; failing to use a respirator while grinding down joints and other rough spots on metal automobile bodies and getting lead poisoning from dust. *Travelers Ins. Co.* v. *Burden,* 94 F.2d 880. To these we add as very similar to this case, *Ricci* v. *Katz,* 267 A.D. 928, 46 N.Y.S.2d 781, where a farm laborer collecting stones was injured when the tractor he was operating against orders fell upon him.

*Kasper* v. *Liberty Foundry Co.,* (Mo. App.) 54 S.W.2d 1002, falls on the other side of the division line. There, the claimant, employed as a moulder, was injured when he took a casting he had moulded into the grinding room and undertook to grind it smooth in direct violation of a shop rule. Another illustration is *Burch* v. *Ramapo Iron Works,* 210 A.D. 506, 206 N.Y.S. 868, where the worker assigned to operating an air hammer, sustained fatal injuries while pulling an iron clamp from a furnace by means of a long hook. Prior to the incident causing his death the employee had been repeatedly told by his foreman to stick to the hammer and to do no other work. In both *Kasper* and *Burch* compensation was denied. The rationale in each case was that at the time of the injury the employee was meddling of his own volition in an area entirely outside of the work which he had been hired to do.

In our state, *Almeida* v. *United States Rubber Co.,* 82 R. I. 264, 107 A.2d 330, although it does not involve an injury sustained while engaged in a prohibited activity, is nonetheless illustrative of the kind of situation where compensation is denied because the employee is doing something unrelated to what he had been hired to do, rather than while performing an assigned task in a prohibited manner. There the workman, who had been employed as a vulcanizer

helper, sustained his injury while operating a lead-stripping machine solely for his own convenience and purpose, and as a meddler.

Even our limited reference to the authorities makes it apparent that the issue is a close one. It must, nonetheless, be resolved. That we disagree with the commission's legal conclusion and find that the operation of a forklift truck in the circumstances of this case falls on the method-or-manner-of-doing-the-job side of the division line is not, however, decisive unless it can in addition be shown that at the time and place of the injury petitioner was reasonably fulfilling the duties of his employment or something incidental thereto.

The record on that narrow question is so scanty and inconclusive that it is difficult, if not impossible, to determine with justice to the parties whether petitioner was then engaging in doing, although in a prohibited manner, the ultimate thing which he had been employed to do. His own testimony is of no assistance since he has no recollection of what happened on August 3.[1] A fellow employee, in a bet-

---

[1]His testimony in this respect was as follows:

"Q. On the day of the accident, what were you doing?

"A. I have no memory of my accident.

"Q. What is that again?

"A. I have no memory. Due to my memory, my brain injury, I have no remembrance of the day, August 3.

"Q. You have no memory at all what happened August 3?

"A. No, I don't.

"Q. Previous to August 3, had you been operating a forklift truck?

"A. Yes, sir.

"Q. At the warehouse?

"A. Yes, sir.

"Q. And as far as August 3 is concerned, you have no concept of what you did that day at all?

"A. No, sir.

In cross-examination the testimony was:

"Q. Let me ask you this. You remember nothing of August 3, 1966, the day this happened, is that correct?

"A. It's correct."

ter position than any of the other witnesses, to describe petitioner's activities just prior to the occurrence of the injury, adds little. Although he testified that he heard a clank, turned around, and saw the forklift truck fall off the platform and on top of petitioner, he did not say whether petitioner was then engaged in any activity benefiting his employer. And the commission, while it perhaps might have drawn an inference as to whether or not petitioner was then acting within the scope of what he had been employed to do, did not engage in the inferential process and found only that "At 12:25 p.m. on August 3, 1967 (sic) the petitioner was operating a forklift truck upon the premises of the special employer. The forklift truck fell from a platform to the ground landing on top of the petitioner."

A final disposition of the case based upon a record so bereft of evidence upon such a decisive issue would be fair neither to the employee nor to the employer. Final disposition should more properly await a factual determination of the issue in doubt by the commission in whose exclusive province the legislature has placed that duty and responsibility. *Varin* v. *Lymansville Co.*, 88 R. I. 169, 143 A.2d 705; *Stillwater Worsted Mills, Inc.* v. *Mehegan*, 80 R. I. 449, 98 A.2d 267.

The petitioner's appeal is sustained on the ground that the commission misconceived the controlling law. The case is remanded to the commission where the parties may present evidence with relation to the precise nature of the petitioner's activity at the time and place of his injury. The commission shall thereupon after hearing such evidence enter a new decree in compliance with this opinion.

*Edward I. Friedman, Mary Ellen McCabe*, for petitioner.

*Joseph A. Kelly*, for respondent.