**WINGFOOT ENTERPRISES d/b/a Tandem Staffing, Petitioner,**

v.

**Marleny ALVARADO, Respondent.**

No. 01–0825.

Supreme Court of Texas.

Argued Sept. 18, 2002.

Decided July 3, 2003.

Carolyn Stamper Schultz, Norman E. Snyder, Jr., Tucker Taunton Snyder & Slade, Houston, for Petitioner.

Jorge Luis Gomez, Gomez Law Firm, Houston, for Respondent.

Justice OWEN delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice O'NEILL, Justice JEFFERSON, Justice SMITH and Justice WAINWRIGHT joined.

The issue in this case is whether an employee can have more than one employ-

er for purposes of the Workers' Compensation Act and its exclusive remedy provision.[1] We conclude that there can be more than one employer, and that the trial court correctly granted summary judgment in favor of Wingfoot Enterprises d/b/a Tandem Staffing ("Tandem"), a temporary staffing provider that employed Marleny Alvarado. Because the court of appeals concluded otherwise, we reverse the court of appeals' judgment[2] and render judgment that Alvarado take nothing.

## I

Tandem is in the business of providing temporary general labor to various industrial companies.[3] Tandem had an oral agreement to provide temporary workers to Web Assembly, Inc. Under the agreement, Tandem had sole responsibility for all aspects of hiring, screening, and terminating employees sent to Web. Tandem was also responsible for paying the employees' salaries, unemployment taxes, social security taxes, and for withholding federal income taxes. However, there was no express agreement regarding workers' compensation coverage for the temporary employees. There was evidence that Web "assumed" that Tandem's fees were sufficient to cover the cost of workers' compensation insurance.

Tandem gave its employees details about their job assignments at Web and provided basic safety equipment and training. Tandem also had supervisors on-site at Web to check employees in, to get them started working promptly, to issue them proper safety equipment, and to monitor their breaks and lunch hours. Web supervised the specific tasks performed by the temporary employees, but Tandem retained the right to determine which employees would perform a particular task for Web, could substitute a different employee to perform a particular task, and could reassign an employee to another task.

Tandem hired Marleny Alvarado and, shortly thereafter, assigned her to do manual assembly work at Web's manufacturing facility. Web, however, assigned Alvarado to operate a staking or stamping machine. It was against Tandem's policy for its workers to operate industrial machinery, a policy of which Alvarado was aware. Alvarado did not notify Tandem about this job assignment or that the job was unsuitable or unsafe, as she was required to do, but there was evidence that Tandem's on-site supervisor knew Alvarado was operating the machine. About two days after Alvarado began working at Web's facility, the tips of three of her fingers were severed while she was operating the machine.

At the time of Alvarado's injury, Tandem maintained workers' compensation insurance coverage for Alvarado and its other employees. Web also had workers' compensation insurance coverage for its employees. Alvarado applied for and received workers' compensation benefits under Tandem's policy, but she subsequently sued Tandem, claiming that it was negligent and grossly negligent in a number of ways, alleging generally that Tandem failed to properly train and supervise her, warn her of dangers, and provide her with a safe workplace. Alvarado also sued Web.

Tandem moved for summary judgment

---

1. *See* Tex. Lab.Code § 408.001.

2. 53 S.W.3d 720.

3. Tandem is not, however, a "staff leasing services company" as defined and regulated by the Staff Leasing Services Act. *See* Tex. Lab.Code §§ 91.001 *et seq.*

under both Rule 166a(c) and 166a(i),[4] arguing, among other things, that there was no evidence to support Alvarado's claims or, alternatively, that the Texas Workers' Compensation Act's exclusive remedy provision barred Alvarado's claims because Tandem was Alvarado's employer or co-employer at the time she was injured. The day before trial, the trial court granted both of Tandem's motions for summary judgment without stating its reasons. The trial court did not sever Tandem from the case, but proceeded with a jury trial only on Alvarado's claims against Web. Tandem did not participate in the trial. The jury found that Alvarado was Web's "borrowed employee" at the time she was injured. The charge instructed the jury that "[o]ne who would otherwise be in the general employment of one employer is a 'borrowed employee' of another employer if such other employer or his agents have the right to direct and control the details of the particular work inquired about." Because Web had workers' compensation coverage, the trial court rendered final judgment in its favor based on the exclusive remedy provision of the Workers' Compensation Act.[5] That same judgment also made the prior summary judgments granted in favor of Tandem final, resulting in a take-nothing judgment against Alvarado.

Alvarado appealed the summary judgment in favor of Tandem, but did not appeal the judgment in favor of Web. The court of appeals affirmed the summary judgment on Alvarado's gross negligence claim, but reversed the judgment on Alvarado's negligence claim, holding that there is some evidence to support that claim.[6]

With regard to Tandem's contention that it is entitled to the protection of the exclusive remedy provision of the Workers' Compensation Act, the court of appeals concluded that an injured worker can have only one employer for workers' compensation purposes and found there is a fact question as to whether Tandem or Web was Alvarado's employer at the time she was injured, precluding summary judgment in Tandem's favor.[7] In so holding, the court of appeals applied a common-law "right to control" test and found that there is some evidence that both Tandem and Web had the right to control Alvarado's work when she was injured.[8] Because Alvarado did not appeal the adverse jury finding that she was Web's borrowed employee and because Tandem was not a party to the trial of that issue, the court of appeals did not address the jury's finding.

Tandem filed a petition for review in this Court, reasserting both the exclusive remedy provision of the Workers' Compensation Act and, alternatively, the contention that there is no evidence that it was negligent. Alvarado does not seek review of the court of appeals' adverse judgment on her gross negligence claim. Therefore, the only claim before this Court is Alvarado's negligence claim against Tandem.

We granted Tandem's petition to resolve differing views among the courts of appeals as to whether a general employer[9] that provides workers' compensation coverage for an employee is precluded from relying on the exclusive remedy provision of the Workers' Compensation Act if the employee was injured while the details of

4. TEX.R. CIV. P. 166a(c), (i).

5. See TEX. LAB.CODE § 408.001.

6. 53 S.W.3d at 726–27.

7. *Id.* at 724–25.

8. *Id.*

9. We use the term "general employer" in this opinion to refer to a provider of temporary workers that employs a worker who is then assigned to work for a client of the provider.

the employee's work were under the control and supervision of another entity.[10] Because we conclude that Tandem was entitled to summary judgment based on the exclusive remedy provision, we do not consider Tandem's no evidence points.

## II

The starting point in our analysis is the Texas Workers' Compensation Act.[11] The general definitions section of the Act defines an employer:

"Employer" means, unless otherwise specified, a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage. The term includes a

governmental entity that self-insures, either individually or collectively.[12]

For purposes of the foregoing definition, an employer has "workers' compensation insurance coverage" if the employer has either obtained an approved insurance policy or secured the payment of compensation through self-insurance as provided under the Act.[13] In the sections of the Act dealing with coverage election, "employer" is defined as "a person who employs one or more employees."[14]

The exclusive remedy provision of the Act says, "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or

---

10. *Compare Chapa v. Koch Ref. Co.*, 985 S.W.2d 158, 161 (Tex.App.-Corpus Christi 1998), *rev'd on other grounds*, 11 S.W.3d 153 (Tex.1999) (holding that workers' compensation was injured worker's exclusive remedy against both the leasing company and the client company because both provided workers' compensation benefits, the worker recovered benefits from the leasing company, and the client company had the right to control the employee's work activities), *and Tex. Indus. Contractors, Inc. v. Ammean*, 18 S.W.3d 828, 831 (Tex.App.-Beaumont 2000, pet. dism'd by agr.) (holding that general employer was entitled to rely on the exclusive remedy provision even though there was some evidence that premises owner exercised control over the injury-producing activity because the general employer had workers' compensation insurance, and the injured employee accepted benefits under that policy), *with Coronado v. Schoenmann Produce Co.*, 99 S.W.3d 741, 753 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (concluding that when "one entity borrows another's employee, workers' compensation law identifies one party as the 'employer' and treats all others as third parties"), *Alvarado*, 53 S.W.3d at 724–25 (holding that leasing company and client company were not co-employers of injured worker, and leasing company was not entitled to summary judgment based on the exclusive remedy provision because there was a fact question about whether the leasing company or the client company had the right to control the employ-

ee's activities when she was injured), *Archem Co. v. Austin Indus., Inc.*, 804 S.W.2d 268, 270–71 (Tex.App.-Houston [1st Dist.] 1991, no writ) (holding that an employee can have only one employer for workers' compensation purposes and that is the person or entity with the "right to control" the employee at the time of the accident), *and Smith v. Otis Eng'g Corp.*, 670 S.W.2d 750, 751–52 (Tex.App.-Houston [1st Dist.] 1984, no writ) (holding that the person or entity with the right to control the injured worker at the time of the accident is the only employer for workers' compensation purposes).

11. TEX. LAB.CODE §§ 401.001 *et seq.*

12. *Id.* § 401.011(18).

13. Section 401.011(44) defines "Workers' Compensation insurance coverage":

"Workers' compensation insurance coverage" means:
(A) an approved insurance policy to secure the payment of compensation;
(B) coverage to secure the payment of compensation through self-insurance as provided by this subtitle; or
(C) coverage provided by a governmental entity to secure the payment of compensation.
*Id.* § 401.011(44).

14. *Id.* § 406.001.

employee of the employer for the death of or a work-related injury sustained by the employee." [15] But if an employer, i.e., "a person who employs one or more employees," [16] elects not to obtain workers' compensation insurance, that employer is subject to common-law negligence claims and may not assert certain defenses, including contributory negligence, assumed risk, or that the injury or death was caused by a fellow employee. [17]

The Act also defines "employee":

(a) In this subtitle, "employee" means each person in the service of another under a contract of hire, whether express or implied, or oral or written.

(b) The term "employee" includes:

(1) an employee employed in the usual course and scope of the employer's business who is directed by the employer temporarily to perform services outside the usual course and scope of the employer's business;

(2) a person, other than an independent contractor or the employee of an independent contractor, who is engaged in construction, remodeling, or repair work for the employer at the premises of the employer; and

(3) a person who is a trainee under the Texans Work program established under Chapter 308.

(c) The term "employee" does not include:

(1) a master of or a seaman on a vessel engaged in interstate or foreign commerce; or

(2) a person whose employment is not in the usual course and scope of the employer's business. [18]

The Workers' Compensation Act defines "course and scope of employment" to mean, in pertinent part,

an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations.... [19]

Alvarado concedes that she is Tandem's employee for some purposes, and the summary judgment evidence conclusively establishes that she is. Tandem made all decisions regarding Alvarado's employment, including whether to hire her, fire her, and determining the client companies for whom she would work. Tandem paid Alvarado's salary, withheld taxes, and provided training and benefits. At the time she was injured, Alvarado was working at Web's facility pursuant to Tandem's direction, to serve Tandem's business purposes. While at Web, Tandem provided some degree of on-site supervision and required Alvarado to report any unsafe conditions to Tandem and any deviations in job assignment to Tandem.

But Alvarado contends that when Web took control of the details of her work, she ceased to be an employee of Tandem for workers' compensation purposes. She argues that when one entity "borrows" another's employee, workers' compensation law identifies one party as the employer and treats all others as third parties, citing *Smith v. Otis Engineering Corp.* [20] and *Ar-*

---

**15.** *Id.* § 408.001(a).

**16.** *Id.* § 406.001.

**17.** *Id.* § 406.033.

**18.** *Id.* § 401.012(a), (b), (c).

**19.** *Id.* § 401.011(12).

**20.** 670 S.W.2d 750, 751 (Tex.App.-Houston [1st Dist.1984], no writ).

*chem Co. v. Austin Industrial, Inc.*[21] Alvarado therefore contends that there can be only one employer to which the exclusive remedy provision of the Act applies. Alvarado argues that because there is evidence that Web controlled the details of her work, and indeed, a jury found that Web was her employer after summary judgment had been rendered in favor of Tandem, summary judgment for Tandem was improper.

The jury's finding that Web was Alvarado's employer is not before us, and that finding is not binding on Tandem, who was not a party to the trial.[22] We agree, however, that there was summary judgment evidence that Web controlled the details of Alvarado's work at the time of her injury. Indeed, Tandem concedes as much. We assume, without deciding, that Alvarado was Web's borrowed employee because it had the right to control and did control the details of Alvarado's work at the time she was injured. The question we must decide is whether, for purposes of workers' compensation, a general employer like Tandem remains an "employer" within the meaning of the Act and thus whether the exclusive remedy provision can apply to both the general employer and one who has become an employer by controlling the details of a worker's work at the time of injury.

■ As we said in *Texas Workers' Compensation Insurance Fund v. Del Industrial, Inc.*, we apply the Act as written in determining workers' compensation issues,[23] and it is the Act to which we must look as our starting point. Tandem, as Alvarado's general employer, and Alvarado fall squarely within the Act's definitions of employer and employee.[24] Tandem employed Alvarado and provided workers' compensation insurance coverage for her.[25] She was acting in furtherance of Tandem's business while she was working at its client company, Web. Although Tandem's president testified that he thought Alvarado was outside the course and scope of her employment because she was operating an industrial machine at the time of her injury in violation of Tandem's company policy, that opinion does not undercut the undisputed facts. Tandem hired Alvarado for the purpose of sending her to its clients to work as a laborer. The fact that she disobeyed directives from Tandem about operating machinery while she was on the job did not take her out of the course and scope of her employment with Tandem.[26]

■ Neither the definitions of "employer" and "employee" under the Act nor the exclusive remedy provision expressly fore-

---

**21.** 804 S.W.2d 268, 269 (Tex.App.-Houston [1st Dist.1991], no writ).

**22.** *Cf. Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652–53 (Tex.1996) (*res judicata* prevents the relitigation of a claim or cause of action that has been finally adjudicated in an earlier suit, but only when the parties in the first suit are the same as those in the second suit or are in privity with them).

**23.** 35 S.W.3d 591, 596 (Tex.2000).

**24.** Tex. Lab.Code. §§ 401.011(18), 406.011.

**25.** *See id.*

**26.** *See Md. Cas. Co. v. Brown*, 131 Tex. 404, 115 S.W.2d 394, 397 (1938) ("While it seems to be the rule that a violation of instructions of an employer by an employee will not destroy the right to compensation, if the instructions relate merely to the manner of doing work, yet it seems to be held by the weight of authority that violation of instructions which are intended to limit the scope of employment will prevent a recovery of compensation."); *Brown v. Forum Ins. Co.*, 507 S.W.2d 576, 577 (Tex.Civ.App.-Dallas 1974, no writ) (employee killed while flying a private plane in furtherance of employer's work was still in the course of his employment in spite of the company rule against using private or chartered aircraft in connection with work duties).

closes the possibility that there may be more than one employer. The definitions do not provide that a general employer ceases to be the employee's employer for workers' compensation purposes when another person exercises control over the details of the employee's work and the employee is thereby expressly or impliedly in the service of that third person under a contract of hire.[27] And in examining the Labor Code's overall scheme for workers' compensation and for protecting workers,[28] we conclude that the Act's decided bias in favor of employers electing to provide coverage for their employees supports our conclusion that the Act permits more than one employer for workers' compensation purposes.

The Texas Labor Code recognizes that an employer may be in the business of providing temporary workers to others. The Code defines "Temporary common worker employer" as "a person who provides common workers to a user of common workers. The term includes a temporary common worker agent or temporary common worker agency."[29] The Code defines "common worker":

(3) "Common worker" means an individual who performs labor involving physical tasks that do not require:

(A) a particular skill;

(B) training in a particular occupation, craft, or trade; or

(C) practical knowledge of the principles or processes of an art, science, craft, or trade.[30]

A "user of common workers" is also defined: " 'User of common workers' means a person who uses the services of a common worker provided by a temporary common worker employer."[31] There is some regulation of temporary common worker employers under Chapter 92 of the Code,[32] but it is not as extensive as the regulation of a staff leasing service provider under Chapter 91 of the Code.

The Staff Leasing Services Act, by definition, does not cover the providers of temporary workers. The term "Staff leasing services" "does not include ... temporary help ... or ... a temporary common worker employer as defined by Chapter 92."[33] The Staff Leasing Services Act applies to arrangements in which "the employee's assignment is intended to be of a long-term or continuing nature, rather than temporary or seasonal in nature, and a majority of the work force at a client company worksite or a specialized group within that work force consists of assigned employees of the license holder."[34]

The Staff Leasing Services Act contemplates that one workers' compensation policy procured by the staff leasing service company will cover employees leased to a client company, and that both the leasing company and the client may rely on the exclusive remedy provision of the Workers' Compensation Act.[35]

---

27. *See* TEX. LAB.CODE §§ 401.011(18), 406.001, 401.012(a).

28. *Del Indus., Inc.,* 35 S.W.3d at 593 (citing *Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 133 (Tex.1994)).

29. TEX. LAB.CODE § 92.002(7).

30. *Id.* § 92.002(3)

31. *Id.* § 92.002(8).

32. *See id.* §§ 92.002, 92.011, 92.012, 92.022, 92.024, 92.025.

33. *Id.* § 91.001(14)(A), (D).

34. *Id.* § 91.001(14).

35. *See id.* § 91.006(a) ("A certificate of insurance coverage showing that a license holder maintains a policy of workers' compensation insurance constitutes proof of workers' compensation insurance coverage for the license

Tandem does not qualify as a staff leasing service provider under the Staff Leasing Services Act because that Act was not intended to apply to providers like Tandem. However, the substantive provisions of and policies underlying the Staff Leasing Services Act are instructive. The Labor Code expressly addresses "co-employees" in that Act.[36] Staff leasing service companies do not meet the requirement of that Act unless "employment responsibilities are in fact shared by the license holder and the client company."[37] A contract between a staff leasing service company and a client must provide that the leasing company "shares, as provided by Subsection (b), with the client company the right of direction and control over employees assigned to a client's worksites."[38] The referenced subsection (b) says:

(b) Notwithstanding any other provision of this chapter, a client company retains responsibility for:

(1) the direction and control of assigned employees as necessary to conduct the client company's business, discharge any applicable fiduciary duty, or comply with any licensure, regulatory, or statutory requirement. . . . [39]

As we explained in *Del Industrial, Inc.,* under the Staff Leasing Services Act, a

staff leasing company makes the election of whether to provide workers' compensation insurance coverage for both itself and the client company for the employees it leases.[40] If a leasing company elects coverage, its policy covers both the leasing company and its client company as to the leased employees.[41] The premium for workers' compensation coverage is determined under the Staff Leasing Services Act based on the client company's experience rating for the first two years of the client company's contract.[42] But thereafter, the client company may obtain coverage for the leased employees, and the premium may be based on other factors in the circumstances described in the Act.[43] If the leasing company elects not to obtain workers' compensation coverage, both the leasing company and its client are subject to section 406.033 of the Code with regard to the leased employees. Section 406.033 permits negligence suits and prevents the assertion of certain common law defenses by employers.[44]

The Labor Code also recognizes that a general contractor may procure workers' compensation coverage for subcontractors and subcontractors' employees.[45] And a motor carrier[46] may provide workers' compensation to an owner operator[47] and employees of an owner operator.[48] The Code

holder and the client company with respect to all employees of the license holder assigned to the client company."); *id.* § 91.042(d) (explaining that license holder elects for both itself and a client company whether to provide workers' compensation insurance).

36. Tex. Lab.Code §§ 91.001 *et seq.*

37. *Id.* § 91.001(14).

38. *Id.* § 91.032(a)(1).

39. *Id.* § 91.032(b)(1).

40. 35 S.W.3d 591, 594 (Tex.2000).

41. *Id.*

42. Tex. Lab.Code § 91.042(b).

43. *Id.* § 91.042(e).

44. *Id.* § 91.042(d); *see also Del Indus., Inc.,* 35 S.W.3d at 594.

45. Tex. Lab.Code § 406.123(a).

46. *Id.* § 406.121(3) (defining "Motor carrier").

47. *Id.* § 406.121(4) (defining "Owner operator").

48. *Id.* § 406.123(c).

provides that a written agreement[49] to provide coverage "makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state."[50] Similar provisions were contained in prior legislation.[51] That legislation was construed to mean that when a premises owner agreed to procure workers' compensation coverage for its general contractor and the general contractor's subcontractor, a negligence suit by the subcontractor's employee against both the general contractor and the subcontractor was barred by the exclusive remedy provision of the workers' compensation legislation in effect in 1991.[52]

From an examination of Chapter 92, which expressly contemplates the existence of temporary common worker employers, the Staff Leasing Services Act, and the provisions of the Code that deal with general contractors, subcontractors, and their employees, we glean at least three things. First, the Labor Code expressly recognizes the existence of employers who engage in the business of providing temporary workers to others. Second, the Labor Code does not abhor the concept of two employers for workers' compensation purposes. Third, the Staff Leasing Services Act and section 406.123 (covering general contractors and subcontractors), like other workers' compensation provisions in the Code, encourage employers to obtain workers' compensation insurance coverage by providing benefits to the employer, including the exclusive remedy provision, if coverage is obtained. The Staff Leasing Services Act goes further and provides disincentives, such as removing common law defenses, if coverage is not obtained.

We recognized the benefits of workers' compensation coverage to both employees and employers in *Hughes Wood Products, Inc. v. Wagner.*[53] We said there that:

> The workers' compensation act was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment.... The act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on-the-job.... In exchange for this prompt recovery, the act prohibits an employee from seeking common-law remedies from his employer, as well as his employer's agents, servants, and employees, for personal injuries sustained in the course and scope of his employment.[54]

These purposes of the Act are carried out by recognizing that the express definitions of "employer" and "employee" and the exclusive remedy provision may apply to more than one employer. An employee in Alvarado's situation will be working for her general employer (i.e., the temporary staffing provider), but will also be subjected to laboring in the workplace and under

---

49. *Id.* § 406.121(a).

50. *Id.* § 406.123(e).

51. *See* Act of Dec. 11, 1989, 71st Leg., 2d C.S., ch. 1, 1989 Tex. Gen. Laws 1, 15–16; *see also* Act of May 26, 1983, 68th Leg., R.S., ch. 950, 1983 Tex. Gen. Laws 5210, 5210–11.

52. *Williams v. Brown & Root, Inc.,* 947 S.W.2d 673, 675–77 (Tex.App.-Texarkana 1997, no writ).

53. 18 S.W.3d 202, 206 (Tex.2000).

54. *Id.* at 206–07 (quoting *Darensburg v. Tobey,* 887 S.W.2d 84, 86 (Tex.App.-Dallas 1994, writ denied) (citing *Reed Tool Co. v. Copelin,* 610 S.W.2d 736, 739 (Tex.1980))); *Paradissis v. Royal Indem. Co.,* 507 S.W.2d 526, 529 (Tex. 1974); *see also Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 511 (Tex.1995).

the direction of the general employer's client company. Some client companies may carry workers' compensation insurance while others may not. An employee injured while working under the direct supervision of a client company is conducting the business of both the general employer and that employer's client. The employee should be able to pursue workers' compensation benefits from either. If either has elected not to provide coverage, but still qualifies as an "employer" under the Act, then that employer should be subject to common law liability without the benefit of the defenses enumerated in section 406.033. Temporary workers by definition move from one client company to another. They do not know who will be directing their work from day to day. The only constant in their work is that they are employed by their general employer, to whom they look for payment of wages and their work assignments. The purposes underlying the Workers' Compensation Act and its definitions of "employer" and "employee" indicate that the general employer is, and should be, an "employer" of a temporary worker even if a client company directs the details of that employee's work when the employee is injured. Further, an employee should not be placed in the position of trying to determine, perhaps at his or her peril, which of two entities was his or her employer on any given day or at any given moment during a day.

We note that in a number of other jurisdictions, either by statute or case law, both a general employer and one who borrows that employer's employee are immune from common-law suit under statutory provisions similar to Texas's exclusive remedy provision, if one or both maintain workers' compensation coverage.[55]

---

55. *See generally* LARSON, LARSON'S WORKERS' COMPENSATION LAW § 67.04D (2003); *see also* CAL. INS.CODE § 11663 ("As between insurers of general and special employers, one which insures the liability of the general employer is liable for the entire cost of compensation payable on account of injury occurring in the course of and arising out of general and special employments unless the special employer had the employee on his or her payroll at the time of injury, in which case the insurer of the special employer is solely liable."); *Anderson v. Tuboscope Vetco, Inc.*, 9 P.3d 1013, 1017 (Alaska 2000) (stating that under the special employment doctrine, temporary agency employees are employees of both the temporary agency and the company to which they are assigned and implying that both companies are immune from negligence claims); *Marlow v. Mid S. Tool Co., Inc.*, 535 So.2d 120, 123 (Ala.1988) (stating that the court had established in a line of cases that for workers' compensation purposes "a temporary services employee is the employee of *both* his or her *general employer* (i.e., the employment agency) and his or her *special employer* (i.e., the employer to which the employment agency assigned the employee to work")); *Araiza v. U.S. W. Bus. Res., Inc.*, 183 Ariz. 448, 904 P.2d 1272, 1276 (App.1995) ("When a labor contractor such as Manpower supplies or 'lends' its employee to another employer, the result may be an arrangement in which one employee has two employers.... The significance of this arrangement is that both employers are liable for workers' compensation and both are immune from tort liability for injuries received by the employee...."); *Avila v. Northrup King Co.*, 179 Ariz. 497, 880 P.2d 717, 726 (App.1994) ("The exclusivity of workers' compensation coverage as a remedy is based on the existence of an employment relationship. That relationship exists between [the plaintiff] and two employers.... Thus, both his general and special employer are entitled to immunity under [the exclusive remedy provision]."); *Ragsdale v. Wheelabrator Clean Water Sys., Inc.*, 959 P.2d 20, 22–23 (Okla.Ct.App.1998); *Blacknall v. Westwood Corp.*, 307 Or. 113, 764 P.2d 544, 545–47 (1988) (construction worker was the employee of both the lending and borrowing employer, and because the borrowing employer reimbursed the lender for compensation insurance costs, the borrower was immune from suit on common law claims); *cf. D'Andrea v. Manpower, Inc. of Providence*, 105 R.I. 108, 249 A.2d 896, 898–99 (1969) (general employer remained liable for workers' compensation benefits even

We find nothing in the Texas Workers' Compensation Act that would preclude applying its definitions to both a general employer that provides temporary workers and that employer's client company when the general employer, its client, and the employee fit within the express definitions. To the contrary, the purposes of the Act are promoted in giving effect to definitions of "employer" and "employee" when they fit both a provider of temporary workers and its client.

We think it prudent to emphasize that we are deciding today only whether there may be two employers for workers' compensation purposes when a provider of temporary workers furnishes a worker to a client that controlled the details of the work at the time the worker was injured and there was no agreement between the provider of temporary workers and the client regarding workers' compensation coverage. We are aware that there are decisions from Texas courts of appeals that have held that when an employer provides workers to client companies and agrees to procure workers' compensation coverage for those workers, the client company is considered to be the employer for pur-poses of the exclusive remedy provision of the workers' compensation law if the staffing provider actually procured such coverage and the employee was under the direct control of the client or was the client's borrowed servant.[56] In a case applying the law in effect before the Staff Leasing Services Act became effective, another court of appeals held that a client company who controlled the details of an employee's work when her injury occurred was an employer for purposes of the exclusive remedy bar, even though a leasing company carried the employee on its workers' compensation policy under an agreement with its client, and the leasing company was the insured rather than the client.[57] In another case applying the law in effect before the Staff Leasing Services Act became effective, a court of appeals held that an agreement regarding workers' compensation coverage that essentially would have met the requirements of the Staff Leasing Services Act, had it been in effect, was enforceable, and that the injured employee's suit against both the leasing company and its client was barred.[58] And another court of appeals has held that there can be co-employers for workers' compensation purposes when a temporary employment

though special employer had control and direction over the employee's work and employee was injured while operating equipment contrary to the general employer's instruction).

had a right to control employee and therefore whether it could assert exclusive remedy provision based on workers' compensation policy obtained by general employer who supplied contract labor).

56. *Rodriguez v. Martin Landscape Mgmt. Inc.,* 882 S.W.2d 602, 605–06 (Tex.App.-Houston [1st Dist.] 1994, no writ); *Gibson v. Grocers Supply Co., Inc.,* 866 S.W.2d 757, 760 (Tex. App.-Houston [14th Dist.] 1993, no writ); *Marshall v. Toys–R–Us Nytex, Inc.,* 825 S.W.2d 193, 196 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *Denison v. Haeber Roofing Co.,* 767 S.W.2d 862, 864–65 (Tex. App.-Corpus Christi 1989, no writ); *see also Guerrero v. Standard Alloys Mfg. Co.,* 566 S.W.2d 100, 102 (Tex.Civ.App.-Beaumont 1978, writ ref'd n.r.e.) (holding there was a fact question about whether client company

57. *Pederson v. Apple Corrugated Packaging, Inc.,* 874 S.W.2d 135, 137–38 (Tex.App.-Eastland 1994, writ denied).

58. *Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d 835, 840, 847 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *see also Cherry v. Chustz,* 715 S.W.2d 742, 743–44 (Tex. App.-Dallas 1986, no writ) (holding that independent contractor could assert the exclusive remedy bar in a suit by its employee even though the company that retained the contractor paid the workers' compensation premiums).

agency agreed in a written contract with its client to provide workers' compensation insurance for the temporary employee, and did in fact pay benefits, but the client controlled the details of the injured employee's work.[59] The court in that case held that the client was entitled to immunity based on the exclusive remedy provision of the Workers' Compensation Act.[60] None of the issues presented in the foregoing cases are before us today, and we express no opinion on those issues.

We turn to Alvarado's argument that the common-law doctrine of right to control should govern this case.

## III

We recognized in *Del Industrial, Inc.* that " '[t]he common law has been dramatically engrafted upon by the [L]egislature. Where the common law is revised by statute, the statute controls.' "[61] In *Del*, we held that the Staff Leasing Services Act could result as a practical matter in a split workforce, meaning that some employees had workers' compensation coverage while others did not.[62] This did not deter us from applying the Act as written, even though there was a long common-law history prohibiting a split workforce.[63]

As discussed above, the Workers' Compensation Act has express definitions of "employer" and "employee" that should be given effect when applicable, even if that results in an employee's having more than one employer for purposes of workers' compensation. As we have seen, nothing

in the Act provides that there must be only one "employer" for workers' compensation purposes. Furthermore, nothing in the common-law decisions of this Court is at odds with the concept that an employee may have two employers for workers' compensation purposes.

▇ We said in *Del Industrial, Inc.* that "[g]enerally, courts determine whether ... the subscribing company is the worker's employer under the right-of-control test,"[64] citing our decision in *Thompson v. Travelers Indemnity Co. of Rhode Island.*[65] But that statement cannot be lifted out of context and stretched to mean that there can be only one "employer" for workers' compensation purposes. In *Thompson,* the issue was whether a jockey was an employee of the racetrack or an independent contractor.[66] The jockey sought to obtain workers' compensation benefits under the racetrack's policy, and the compensation carrier contested his status as an employee. We held that he was not an employee, but rather was an independent contractor.[67] Alvarado was not an independent contractor for Tandem, and no one in this case claims that she was. The evidence shows that Alvarado was hired by a temporary staffing company with all the indicia of an employee, worked for the staffing company at its client's place of business, and was directed in the details of her work by the client. Alvarado had two "employers" for workers' compensation purposes.

59. *Garza v. Excel Logistics, Inc.*, 100 S.W.3d 280, 287–88 (Tex.App.-Houston [1st Dist.] 2002, pet. filed).

60. *Id.*

61. 35 S.W.3d 591, 596 (Tex.2000) (quoting *Bartley v. Guillot*, 990 S.W.2d 481, 485 (Tex. App.-Houston [14th Dist.] 1999, pet. denied)).

62. *Id.*

63. *Id.*

64. *Id.* at 595.

65. 789 S.W.2d 277, 278 (Tex.1990).

66. *Id.*

67. *Id.* at 279.

Nor is the concept that there can be two employers for workers' compensation purposes foreclosed by the right to control principles that we have articulated in the tort context in analyzing respondeat-superior and borrowed-servant principles. We have said that a general employee of one employer may become the borrowed servant of another with respect to *some* activities.[68] The common-law principles that define when there will be vicarious liability are designed to assign liability for injury to third parties to the party who was directing the details of the negligent actor's conduct when that negligence occurred. Determining whether a general employer remains an "employer" for workers' compensation purposes while its employee is acting as the borrowed servant of another is not governed by the same concerns, as we have set forth above.

In *Exxon Corp. v. Perez*, we addressed the parameters of the borrowed-servant doctrine in the context of the borrowing entity's claim that it was entitled to rely on the exclusive remedy provision of the former workers' compensation act.[69] Perez, an employee of Hancock, was injured on a jobsite and sued Exxon. Exxon contended that Perez was its borrowed servant, and that since it was a workers' compensation insurance subscriber, the exclusive remedy provision immunized it from common-law negligence claims.[70] We held that there was a fact question about whether Perez was Exxon's borrowed servant and that the trial court therefore should have submitted an issue to the jury.[71] We did not consider in any way whether Perez's employer, Hancock, would be precluded from relying on the exclusive remedy provision if Perez were found to be Exxon's borrowed servant.

At least two courts of appeals have concluded that the common-law right to control test did not deprive an employer of the benefit of the Act's exclusive remedy provision when an employee was injured while the details of that employee's work were under the control of another. The first of these cases, *Chapa v. Koch Refining Co.*,[72] was decided under the former version of the Texas Workers' Compensation Act.[73] Chapa was employed by an employee leasing company, Stafftek. Stafftek supplied Chapa as a worker to H & S, who in turn had been retained as an independent contractor by Koch. Chapa was injured on Koch's premises. Chapa's general employer, Stafftek, was a subscriber under the Workers' Compensation Act, as was H & S. Chapa sued Stafftek, H & S, and Koch. The court of appeals first held that Chapa was H & S's borrowed servant.[74] But because H & S provided coverage to Chapa under a workers' compensation policy, the court held that the exclusive remedy provision applied and "insulated [H & S] from suits for damages for personal injuries."[75] Chapa had re-

---

**68.** *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex.2002) (plurality opinion) (citing *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex.1977) and *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 225 (Tex.1963)).

**69.** 842 S.W.2d 629, 630 (Tex.1992).

**70.** *Id.*

**71.** *Id.* at 630–31.

**72.** 985 S.W.2d 158 (Tex.App.-Corpus Christi 1998), *rev'd on other grounds*, 11 S.W.3d 153 (Tex.1999).

**73.** *See id.* at 161 (applying Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, § 4.01, 1989 Tex. Gen. Laws 32, *repealed by* Act of May 22, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1175 (current version at Tex. Lab.Code § 408.001)).

**74.** *Id.*

**75.** *Id.*

ceived benefits, however, under Stafftek's policy, not H & S's.[76] The court of appeals concluded that the Act's exclusive remedy provision applied to Stafftek as well as H & S.[77] This Court reversed the court of appeals, but only with regard to its holdings as to Koch's liability.[78] None of the issues regarding workers' compensation or the exclusive remedy provision were before us.

In another case, *Texas Industrial Contractors, Inc. v. Ammean,*[79] Ammean was employed by Texas Contractors. Texas Contractors was hired as an independent contractor by Bayer. Ammean was injured while working on Bayer's premises. The court of appeals held that a reasonable jury could conclude that Bayer exercised actual control over Texas Contractor's activities that resulted in Ammean's injury.[80] The court nevertheless held that Texas Contractors was entitled to rely on the exclusive remedy provision of the Workers' Compensation Act because Texas Contractors had a workers' compensation policy and Ammean had received benefits under it.[81] The Beaumont Court of Appeals seems to have based its decision on the fact that the employee had elected to pursue a claim for workers' compensation from its employer rather than a common-law suit and was bound by that election.[82] That court concluded:

> Ammean argues the exclusive remedy provision does not prevent him from recovering against Texas Contractors at common law because Bayer was his true

employer since it controlled the details of his work and because he did not make an informed election of remedies. Where, however, a worker is hired by one company that has contracted to do work for another, that company has a workers' compensation policy, and the worker receives benefits under that policy following an award by the Texas Workers' Compensation Commission, the worker's common law claim against that company is barred by the Act's exclusive remedy provision, even if control over the details of the work is in the hands of the other company with which that company has contracted.

. . . .

> In any event, Ammean brought this common law claim after he had sought and obtained, with the assistance of an attorney, workers' compensation benefits. No appeal was taken from the award.[83]

Two other court of appeals decisions have applied reasoning that is at odds with the reasoning in *Chapa* and *Ammean*. In *Smith v. Otis Engineering Corp.,* decided under the former workers' compensation statutes, Smith was "in the general employ" of Stewart Well Service Company.[84] Smith was injured while he was unloading equipment from a truck owned by Otis Engineering. Otis's workers' compensation carrier provided benefits to Smith, which he accepted, and Smith executed a release in favor of Otis. Smith then sued Otis, Stewart Well Service, and another

76. *Id.*

77. *Id.*

78. *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 157 (Tex.1999).

79. 18 S.W.3d 828 (Tex.App.-Beaumont 2000, pet. dism'd by agr.).

80. *Id.* at 833–34.

81. *Id.* at 831.

82. *See id.*

83. *Id.* at 831–32.

84. 670 S.W.2d 750, 751 (Tex.App.-Houston [1st Dist.] 1984, no writ).

entity. Otis filed a motion for summary judgment, contending Smith was its borrowed servant as a matter of law and therefore that it was Smith's employer for purposes of the workers' compensation bar of common-law negligence claims.[85] The trial court granted Otis's summary judgment motion, but the court of appeals reversed, holding that whether Smith was Otis's borrowed servant was a fact issue.[86] Part of the rationale for that holding was the court's conclusion that the law "require[s] that one party be named the employer and all others be classified as third parties outside the purview of the workers' compensation law."[87] But the case the court cited for that proposition, *Associated Indemnity Co. v. Hartford Accident & Indemnity Co.*,[88] did not make such a holding, as the concurring opinion in the case before us today pointed out.[89] In fact, the decision in *Hartford* expressly said that it was not required to decide whether to "reject the dual-employment theory and apply the right-of-control test...."[90]

The same court that decided *Smith* subsequently decided *Archem Co. v. Austin Industrial, Inc.*[91] In that case, Vallejo was employed by Austin Industrial, who supplied temporary labor. Austin Industrial's client was Archem, and Vallejo was injured while working at Archem's premises. Vallejo sued Archem and Austin, both of whom contended that because they were workers' compensation subscribers, Vallejo's claims were barred by the exclusive remedy provision.[92] Austin Industrial filed a motion for summary judgment, which the trial court granted. Citing its decision in *Smith*, the court of appeals reversed, saying that "[w]here one entity 'borrows' another's employee, workers' compensation law identifies one party as the 'employer' and treats all others as third parties."[93] The court held that there was a fact question of whether Austin Industrial or Archem was Vallejo's employer at the time he was injured.[94]

The single employer theory from *Smith* and *Archem* was embraced in *Coronado v. Schoenmann Produce Co.*[95] That case did not concern a provider of workers to clients, but rather, which of two affiliated companies was the employer.[96] The court in that case stated that "[f]or liability purposes, where one entity 'borrows' another's employee, workers' compensation law identifies one party as the 'employer' and treats all others as third parties."[97] The court ultimately held that there was no evidence that the defendant exercised any control over the details of the plaintiff's work at the time of the injury.[98]

The same court that decided *Smith* and *Archem* decided the case before us today. The author of the court of appeals' opinion in this case took the unusual but not un-

---

85. *Id.*

86. *Id.* at 752.

87. *Id.* at 751.

88. 524 S.W.2d 373, 376 (Tex.Civ.App.-Dallas 1975, no writ).

89. 53 S.W.3d at 729 (Taft, J., concurring).

90. 524 S.W.2d at 376.

91. 804 S.W.2d 268 (Tex.App.-Houston [1st Dist.] 1991, no writ).

92. *Id.* at 269.

93. *Id.*

94. *Id.* at 271.

95. 99 S.W.3d 741 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

96. *Id.* at 744.

97. *Id.* at 753.

98. *Id.* at 757.

precedented step [99] of concurring to the court's opinion.[100] JUSTICE TAFT criticized the court of appeals' prior decisions in *Smith* and *Archem* as being inconsistent with the purposes of the workers' compensation scheme enacted by the Legislature.[101] JUSTICE TAFT said that if he "were writing on a clean slate," [102] he would have reached a different result:

> For these reasons, I reluctantly follow the rule we articulated in *Smith* and *Archem*. If I were writing on a clean slate, however, I would decide this case by adopting the holding of *Texas Industrial Contractors, Inc. v. Ammean*, 18 S.W.3d 828 (Tex.App.-Beaumont 2000, pet. [dism'd by agr.]) that,
>
> > [when], however, a worker is hired by one company that has contracted to do work for another, that company has a workers' compensation policy, and the worker receives benefits under that policy following an award by the Texas Workers' Compensation Commission, the worker's common law claim against that company is barred by the [Labor Code's] exclusive remedy provision, even if control over the details of the work is in the hands of the other company with which that company has contracted.
>
> *Id.* at 831; *Chapa v. Koch Refining Co.*, 985 S.W.2d 158, 161 (Tex.App.-Corpus Christi 1998), *rev'd on other grounds*, 11 S.W.3d 153 (Tex.1999). This result gives effect to the policy behind the workers' compensation statute, which

deprives the injured employee of a subscriber of many common law rights in return for prompt compensation benefits and medical treatment.... Accordingly, I believe that applying the above holding to this case would yield a fairer result and comport with legislative intent.[103]

We agree with the concurring opinion in the court of appeals in this case that *Smith* and *Archem* were incorrectly decided. Because the holding in *Smith*[104] and *Archem*[105] that there can be only one employer for workers' compensation purposes is at odds with the purposes and policies of the Workers' Compensation Act and with this opinion, we disapprove of those decisions. We also disapprove of similar language in *Coronado v. Schoenmann Produce Co.*[106] Alvarado was Tandem's employee for workers' compensation purposes because she and Tandem fell within the respective definitions of "employee" and "employer" under the Act. The fact that Web actually controlled the details of Alvarado's work at the time she was injured, and thus was also an employer within the meaning of the Act, does not preclude the applicability of the Act's provisions, including the exclusive remedy provision, to both Tandem and Web.

\*     \*     \*     \*     \*     \*

For the foregoing reasons, the trial court properly granted summary judgment in favor of Tandem. Accordingly, we reverse the court of appeals' judgment and render judgment that Alvarado take nothing.

---

99. *See Casso v. Brand*, 776 S.W.2d 551 (Tex. 1989) (Phillips, C.J., authoring both the majority opinion and a dissenting opinion).

100. 53 S.W.3d at 727 (Taft, J., concurring).

101. *Id.* at 730.

102. *Id.*

103. *Id.* at 730–31.

104. 670 S.W.2d 750, 751 (Tex.App.-Houston [1st Dist.] 1984, no writ).

105. 804 S.W.2d 268, 271 (Tex.App.-Houston [1st Dist.] 1991, no writ).

106. 99 S.W.3d 741, 753 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

Justice ENOCH filed a concurring opinion.

Justice SCHNEIDER did not participate in the decision.

Justice ENOCH, concurring.

I agree with the Court that the "right-to-control" test should be rejected as the test to apply when determining who the "employer" is in the workers' compensation context. Unfortunately, though rejecting the test, the Court appears to rely on that test to conclude that Tandem is a joint employer in this case.[1] So, I must disagree with the Court's reasoning. Under the Texas Workers' Compensation Act, an "employer" is defined as a person who makes a contract of hire and has workers' compensation insurance coverage.[2] Because Tandem hired Alvarado and purchased workers' compensation insurance covering Alvarado, Tandem is an "employer" entitled to receive the benefit of the Texas Workers' Compensation Act's exclusive remedy provision.[3] Because I agree with the Court's judgment, I concur.

Rather than rely on a shared right-to-control to determine under the workers' compensation statute who the employer is, I would follow the approach outlined by *Texas Industrial Contractors, Inc. v. Ammean.*[4] In *Ammean,* Richard J. Ammean was hired by Texas Industrial Contractors, but assigned to work at Bayer Corporation.[5] Ammean was injured at Bayer's facility and later filed and received workers' compensation benefits from Texas Industrial Contractors' carrier.[6] Ammean maintained that Bayer was his "employer"

for workers' compensation purposes because Bayer controlled his work, thus, Texas Industrial Contractors was not immune from his suit for negligence. Not knowing if he was correct in his assessment, Ammean also brought a negligence action against Bayer. In deciding which entity qualified as Ammean's employer, the court stated:

> [When] a worker is hired by one company that has contracted to do work for another, that company has a workers' compensation policy, and the worker receives benefits under that policy following an award by the Texas Workers' Compensation Commission, the worker's common law claim against that company is barred by the Act's exclusive remedy provision, even if control over the details of the work is in the hands of the other company with which that company has contracted.[7]

My principal concerns with the Court's position are two-fold. First, it applies the right-to-control test-a test that leads to unfair results—to determine the "employer" for workers' compensation purposes. And second, under these circumstances, it concludes that Alvarado has joint employers—a holding that is neither supported nor predicted by relevant legislative enactments.

Using the right-to-control test is unfair because it leaves employees in Alvarado's circumstance at a loss as to whom they should look for compensation coverage. On the other hand, in these circumstances, though the actual employer procured workers' compensation for its employee

---

1. *See* 111 S.W.3d at 136.

2. Tex. Lab.Code § 401.001(18).

3. *Id.* § 408.001(a).

4. 18 S.W.3d 828 (Tex.App.-Beaumont 2000, pet. dism'd by agr.).

5. *Id.* at 831.

6. *Id.*

7. *Id.*

and the employee actually received benefits from the policy, the employer would not know if it was the "employer" under the compensation act and thus is entitled to the act's exclusivity protection, until a court determines who controls the employee's particular activity. For example, in *Ammean*, were the court to have applied the right-to-control test, then Ammean could have sued Texas Industrial Contractors for negligence even though Ammean collected workers' compensation benefits under a policy paid for by that company.

Furthermore, in concluding that Alvarado has two employers for workers' compensation purposes because they exercise joint control, the Court applies the right-to-control test very broadly. This seems peculiarly inconsistent with the Court's application of this same right-to-control test in *St. Joseph's Hospital v. Wolff*,[8] in which a majority of the Court concluded that the status of "employer" was limited to the entity that was in immediate control of the specific details of the employee's work. The test applied in *Ammean*, I think, produces results more in keeping with Texas's workers' compensation scheme. And it is a more accurate test for determining who Alvarado's "employer" is for workers' compensation purposes.

Texas's workers' compensation scheme was adopted and designed to benefit both the employee and the employer.[9] While it is true, as the Court states, that "nothing in the Act provides that there must be only one 'employer' for workers' compensation purposes,"[10] it is not at all clear to me that the Legislature would permit a temporary employee to have two employers under the Act or that the "co-employer" relationship would further the purposes of the Act.[11]

In relying on "joint" control to conclude that Alvarado had two employers for workers' compensation purposes, the Court looks for guidance by reviewing other parts of the Texas Labor Code, specifically the Staff Leasing Services Act.[12] Section 91.042(c) of that Act states that the staff leasing company and its client company are co-employers for workers' compensation purposes.[13] Interestingly, though, the concept of "co-employers" has not been recognized by the Legislature beyond what it provided in the Staff Leasing Services Act.[14] Particularly, the Legislature has not added the concept to the Workers' Compensation Act. As well, the Legislature's recognition of "co-employer" status in the Staff Services Leasing Act is a specific statutory proviso designed solely for leased employee situations.[15] I note further that the Staff Leasing Act's enactment coincided with the litigation embodied in *Texas Workers' Compensation Insurance Fund v. Del Industrial, Inc.*, which was resolved by us in 2000. And the real issue in that case was over how to calculate insurance premiums [16]-an issue

---

**8.** 94 S.W.3d 513, 537 (Tex.2002) (plurality op.).

**9.** *See, e.g., Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 206–07 (Tex.2000); *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex.1980).

**10.** 111 S.W.3d at 145.

**11.** *Id.* at 145–46.

**12.** *Id.* at 140; TEX. LAB.CODE §§ 91.001–.063.

**13.** TEX. LAB.CODE § 91.042(c).

**14.** *Compare id.* § 91.042(c) *with id.* § 408.001(a). *See also Tex. Workers' Compensation Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 596 (Tex.2000).

**15.** *Del Indus.*, 35 S.W.3d at 596.

**16.** *Id.* at 593–95.

specifically addressed in the statute.[17] The Staff Leasing Act is as consistent with the conclusion that the Legislature did not intend to recognize, generally, that there could be more than one employer for worker's compensation purposes, as it is with the conclusion that the Legislature intends the workers' compensation scheme to recognize dual-employerships.

Furthermore, this case is not one of dual employers. Two entities are "co-employers" when they have joint control over an employee's work. Co-employers have been widely recognized in the labor and employment context, as well as in the workers' compensation context.[18] But these cases reflect situations where the parties either had the intent to conduct business as "co-employers" or situations where the parties expressly contemplate a "co-employer" relationship.[19]

For example, the facts in *Ingalls v. Standard Gypsum, L.L.C.* demonstrate an actual "co-employer" circumstance.[20] In *Ingalls*, two separate companies joined together to operate one facility. Accordingly, the employee was working for all parties at the time of his injury. But the relationship between Tandem and Web is entirely different. Tandem's business is providing temporary help. Web's business is manufacturing. Tandem assigned its employees on a temporary basis to work at Web's premises, but no joint undertaking between Tandem and Web ever existed.

As another example, in *Brown v. Aztec Rig Equipment, Inc.,* William Brown signed an employment agreement which declared that the staff leasing company, Administaff, Inc., and the client company, Aztec, were his "co-employers."[21] As mentioned above, the Legislature has now expressly addressed the circumstances of *Brown* in the Staff Leasing Services Act, which expressly allows a co-employer relationship.[22] And here, we are dealing with a temporary help provider, not a staff leasing company.[23] As well, Alvarado has no express agreement regarding co-employment.

Of course, in situations where the parties expressly contemplate a "co-employer" relationship, there is no reason to disregard such a relationship.[24] But I cannot assume that the Legislature intended for an employee to have two employers under the Texas Workers' Compensation Act when the Legislature has not expressly said so, generally, and has expressly said so only in one narrow business circumstance-staff leasing.

Furthermore, workers' compensation statutes in other jurisdictions have not only clearly recognized "co-employers" and provided the exclusivity defense to each, but those jurisdictions, with limited exceptions, require all employers to carry workers' compensation insurance,[25] which is not the case in Texas. For the Court to recog-

---

17. *See* Tex. Lab.Code § 91.042(b).

18. *See Garza v. Excel Logistics, Inc.,* 100 S.W.3d 280, 283–88 (Tex.App.-Houston [1st Dist.] 2002, pet. filed); *Ingalls v. Standard Gypsum, L.L.C.,* 70 S.W.3d 252, 258 (Tex. App.-San Antonio 2001, pet. denied); *Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d 835, 847 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *Gen. Accident Fire & Life Assurance Corp. v. Callaway,* 429 S.W.2d 548, 549–51 (Tex.App.-Houston [1st Dist.] 1968, no writ).

19. *See, e.g., Ingalls,* 70 S.W.3d at 258; *Brown,* 921 S.W.2d at 847.

20. *Ingalls,* 70 S.W.3d at 256–57.

21. *Brown,* 921 S.W.2d at 838.

22. *See* Tex. Lab.Code § 91.042(c).

23. *Brown,* 921 S.W.2d at 838.

24. *See, e.g., id.* at 847.

25. *See, e.g.,* Ar.Rev.Stat. § 23–1022(A); Cal. Lab.Code §§ 3601, 3602; Or.Rev.Stat. § 656.018(3); R.I. Gen. Laws § 28–29–2(3)(C); Utah Code Ann. §§ 35–1–43, 35–1–60.

nize "co-employer" status not only seems inconsistent with the Legislature's intent expressed in the third-party liability section of the Texas Act,[26] but also it may create ramifications significantly affecting Texas's unique workers' compensation scheme. I would not alter the Legislature's workers' compensation scheme so dramatically. That should be the Legislature's choice. Thus, I would not afford Tandem and Web "co-employer" status for purposes of the exclusivity defense unless the parties expressly contemplated such a relationship.[27]

To determine whether one is immune from a negligence suit under Texas's workers' compensation scheme as an employer, I would reject the right-to-control test and adopt the test suggested in *Ammean:* whether the entity hired the employee and purchased workers' compensation insurance that covered the injured employee. And because I reject the right-to-control test, I necessarily reject the concept of "joint" control embodied in the Court's conclusion that a "co-employer" relationship exists in this case. Further, I do not agree that the Legislature permits such a concept, generally, under the workers' compensation scheme when it has expressly provided for one, but only in a narrow circumstance.

Tandem hired Alvarado and provided workers' compensation insurance that covered Alvarado's injury. Tandem is Alvarado's "employer" as defined by the Act and under the test outlined by *Ammean.* As such, Alvarado's common law claims against Tandem are barred by the Act's exclusivity provision. Accordingly, I concur in the Court's judgment.

26. Tex. Lab.Code § 417.001.

27. *See Brown,* 921 S.W.2d at 847.