ACCEPTED
06-18-00008-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
6/4/2018 4:35 PM
DEBBIE AUTREY
CLERK

**Oral Argument Requested**

**No. 06-18-0008-CV**

---

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
6/4/2018 4:35:37 PM
DEBBIE AUTREY
Clerk

# COURT OF APPEALS
## for the
## SIXTH DISTRICT OF TEXAS
### Texarkana, Texas

---

**William Bradley Lentz, Beverly Lentz, Jason Lentz, M.D., and Rebecca VanLandingham,**

*Appellants,*

**v.**

**Mewbourne Oil Company and Mewbourne Holdings, Inc.,**

*Appellees.*

---

**Appeal from the County Court at Law No. 3**
**Smith County, Texas**
*Honorable Floyd T. Getz, Judge Presiding*

---

## APPELLANTS' BRIEF

---

**Omar G. Alvarez**
State Bar No. 24045402
ogalvarez@ogalvarezlaw.com
**O.G. Alvarez &**
  **Associates, P.C.**
21022 Gathering Oak
San Antonio, TX 78260
Tel.: 210-354-3900
Fax: 800-948-7571

**Collen A. Clark**
State Bar No. 04309100
cclark@clarkmccrea.com
**Clark & McCrea**
3500 Maple Avenue,
Suite 1250
Dallas, TX 75219
Tel.: 214-780-0500
Fax: 214-780-0501

**Jeffrey S. Levinger**
State Bar No. 12258300
jlevinger@levingerpc.com
**J. Carl Cecere** (of counsel)
State Bar No. 24050397
ccecere@cecerepc.com
**Levinger PC**
1700 Pacific Ave.,
Suite 2390
Dallas, TX 75201
Tel: 214-855-6817
Fax: 214-817-4509

*Attorneys for Appellants*

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a), the following is a complete list of all parties to the trial court's judgment and the names and addresses of all trial counsel and appellate counsel.

1.      **Plaintiffs-Appellants:**

William Bradley Lentz, Beverly Lentz, Jason Lentz, M.D., and Rebecca VanLandingham

2.      **Counsel for Plaintiffs-Appellants:**

| | |
|---|---|
| Omar G. Alvarez | Jeffrey S. Levinger |
| O.G. Alvarez & Associates, P.C. | J. Carl Cecere (of counsel) |
| 21022 Gathering Oak | Levinger PC |
| San Antonio, TX 78260 | 1700 Pacific Ave., Suite 2390 |
| (Trial and Appellate Counsel) | Dallas, TX 75201 |
| | (Trial and Appellate Counsel) |

Collen A. Clark
Clark & McCrea
3500 Maple Ave., Suite 1250
Dallas, TX 75219
(Trial and Appellate Counsel)

3.      **Defendants-Appellees:**

Mewbourne Oil Company and Mewbourne Holdings, Inc.

4.      **Counsel for Plaintiffs-Appellees:**

| | |
|---|---|
| David M. Gunn | John R. Mercy |
| Beck Redden LLP | MERCY ✠ CARTER, L.L.P. |
| 1221 McKinney Ave., Suite 4500 | 1724 Galleria Oaks Dr. |
| Houston, TX 77010 | Texarkana, TX 75503 |
| (Appellate Counsel) | (Appellate Counsel) |

Leonard Davis
Fish & Richardson P.C.
110 N. College Ave.,
Suite 1116
Tyler, Texas 75702
(Trial and Appellate Counsel)

Thomas W. Paterson
Susman Godfrey L.L.P.
1000 Louisiana St.,
Suite 5100
Houston, Texas 77002-5096
(Trial and Appellate Counsel)

Melinda D. Hamm
Cotton, Bledsoe, Tighe &
Dawson P.C.
P. O. Box 2776
Midland, Texas 79702-2776
(Trial and Appellate Counsel)

Reagan L. Butts
Mewbourne Oil Company
3620 Old Bullard Rd.
Tyler, Texas 75701-8644
(Trial and Appellate Counsel)

Identity of Parties and Counsel ................................................................................i

Index of Authorities .............................................................................................v

Statement of the Case............................................................................................ vii

Statement Regarding Oral Argument ...................................................... viii

Issues Presented ...................................................................................................ix

Introduction.........................................................................................................1

Statement of Facts and Procedural History...........................................................2

    A.    The Mewbourne family of companies maintains an arrangement under which all workers are considered employees of Mewbourne Holdings, not subsidiaries like MOC.................................2

    B.    Lentz is injured while under the direction of Mewbourne Holdings' employees. .........................................................................5

    C.    The trial court decides that MOC is entitled to section 408.001(a)'s exclusive-remedy bar, holding that MOC—not Mewbourne Holdings—is Lentz's "employer."..................................7

Summary of the Argument....................................................................................10

Argument............................................................................................................12

I.    Standard of Review....................................................................................12

II.    The Trial Court Erred in Concluding that MOC Was Entitled to Summary Judgment on Its Exclusive-Remedy Defense Under TEX. LABOR CODE § 408.001(a). ............................................................14

    A.    MOC Did Not Conclusively Establish that Lentz Is Its "Employee" for Workers' Compensation Purposes............................15

        1.    The Mewbourne companies' arrangement categorizing all workers as employees of Mewbourne Holdings is a relevant factor in determining the identity of Lentz's statutory employer.................................................................17

2. It was Mewbourne Holdings, not MOC, that had the right to control Lentz and directed his activities at the time of his injuries. ..................................................................................27

3. The fact that MOC administered some of the formalities of Lentz's employment on Mewbourne Holdings' behalf does not conclusively establish MOC was his employer..........30

B. Lentz's Acceptance of Workers' Compensation Benefits Does Not Estop Plaintiffs from Denying that MOC Is Lentz's Statutory Employer. ............................................................32

Prayer ................................................................................................35

Certificate of Compliance ...................................................................37

Certificate of Service ..........................................................................38

Appendix:

Order Granting Mewbourne Oil Company and Mewbourne Holdings, Inc.'s Traditional and No-Evidence Motions for Summary Judgment (CR 1407–08) ...........................................tab 1

Order Granting Defendants' Unopposed Motion for Severance and Entry of Final Judgment (CR 1418–19) .....................................tab 2

iv

**Cases**

*Alice Leasing Corp. v. Castillo,*
 53 S.W.3d 433 (Tex. App.—San Antonio 2001, pet. denied) .............................19

*Anderson v. Snider,*
 808 S.W.2d 54 (Tex. 1991) (op. on rehr'g) .......................................................14

*Casso v. Brand,*
 776 S.W.2d 551 (Tex. 1989)..............................................................................13

*City of Houston v. Clear Creek Basin Auth.,*
 589 S.W.2d 671 (Tex. 1979) ........................................................................ 13, 14

*Coastal Transp. Co. Inc. v. Crown Cent. Petroleum Corp.,*
 136 S.W.3d 227 (Tex. 2004)..............................................................................14

*Exxon Corp. v. Perez,*
 842 S.W.2d 629 (Tex. 1992) (per curiam).......................................................1, 19

*Haynes v. City of Beaumont,*
 35 S.W.3d 166 (Tex. App.—Texarkana 2000, no pet.) .................................14, 29

*Little v. Delta Steel,*
 409 S.W.3d 704 (Tex. App.—Fort Worth 2013, no pet.) ............................ 34, 35

*Lopez v. Munoz, Hockema & Reed, L.L.P.,*
 22 S.W.3d 857 (Tex. 2000) ................................................................................32

*Parkchester Holdings, Inc. v. Carrier Corp.,*
 No. 05-04-00912-CV, 2005 WL 995357
 (Tex. App.—Dallas Apr. 29, 2005, no pet.)........................................................13

*Pederson v. Apple Corrugated Packaging, Inc.,*
 874 S.W.2d 135 (Tex. App.—Eastland 1994, writ denied).................... 17, 23, 24

*Pollard v. Hanschen,*
 315 S.W.3d 636 (Tex. App.—Dallas 2010, no pet.)...........................................12

*Port Elevator-Brownsville, L.L.C. v. Casados,*
 358 S.W.3d 238 (Tex. 2012) ...................................................................... passim

*Producer's Chem. Co. v. McKay*,
    366 S.W.2d 220 (Tex. 1963) ........................................................................1, 19

*Roberts v. Davis*,
    160 S.W.3d 256 (Tex. App.—Texarkana 2005, pet. denied) ....................... 27, 32

*St. Joseph Hosp. v. Wolff*,
    94 S.W.3d 513 (Tex. 2002) .................................................................... 20, 23, 28

*Starnes v. United States*,
    139 F.3d 540 (5th Cir. 1998) ....................................................................................28

*Travis v. City of Mesquite*,
    830 S.W.2d 94 (Tex. 1992) ......................................................................................14

*W. Steel Co. v. Altenburg*,
    206 S.W.3d 121 (Tex. 2006) ....................................................................................15

*Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134 (Tex. 2003) .......................... passim

**Statutes**

Tex. Labor Code § 401.011(18) ....................................................................................16

Tex. Labor Code § 401.012(a) ......................................................................................16

Tex. Labor Code § 408.001(a) ................................................................................passim

Tex. Labor Code § 417.001(a) ......................................................................................16

Tex. R. Civ. P. 166a(c) ..................................................................................................14

**Other Authorities**

Restatement (Second) of Agency § 220(2) ..................................................................20

## STATEMENT OF THE CASE

*Nature of the Case:* This is a personal injury case in which Plaintiff William Bradley Lentz suffered catastrophic injuries while working on a well that Defendant Mewbourne Oil Company ("MOC") operated on the McElroy Ranch in Upton County, Texas. (CR 22, 1338) Lentz and his family members sued MOC, its parent company Mewbourne Holdings, Inc. ("Mewbourne Holdings"), and several other parties for their negligence in causing his injuries. (CR 2)

*Trial Court:* Honorable Floyd T. Getz, Presiding Judge of the County Court at Law Number 3, Smith County, Texas.

*Course of Proceedings:* MOC and Mewbourne Holdings filed a traditional and no-evidence motion for summary judgment. They argued that Plaintiffs could not maintain any claims against Mewbourne Holdings because it owed no legal duty to Lentz. (CR 99–101) They also argued that Plaintiffs' claims against MOC were barred by the workers' compensation exclusive-remedy bar in TEX. LABOR CODE § 408.001(a). (CR 91–98)

Plaintiffs acknowledged in their response that summary judgment in favor of Mewbourne Holdings was proper, but argued that MOC had not conclusively proven its entitlement to section 408.001(a)'s exclusive-remedy bar because it was Mewbourne Holdings, not MOC, that was Lentz's employer at the time of his accident. (Sealed CR 16)

*Trial Court's Disposition of the Case:* On December 7, 2017, the trial court granted summary judgment in favor of the Mewbourne Defendants, ordering that Plaintiffs take nothing against both MOC and Mewbourne Holdings. (CR 1407–08 [App. 1]) That ruling became final on January 4, 2018, when the trial court severed Plaintiffs' claims against the Mewbourne Defendants and rendered final judgment. (CR 1418–19 [App. 2])

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. This is an appeal from a take-nothing judgment that bars Appellants from recovering against MOC, a Texas oilfield operator, for its negligence in causing William Lentz's catastrophic injuries, based on the affirmative defense that workers' compensation was Appellants' exclusive remedy. *See* TEX. LABOR CODE § 408.001(a). Determining whether MOC is entitled to raise section 408.001(a)'s exclusive-remedy defense requires evaluation of a lengthy and detailed evidentiary record, and consideration of the unique way in which the Mewbourne family of companies have structured their business operations to make Mewbourne Holdings the sole employer of Lentz and his co-workers. Appellants therefore believe that oral argument will significantly aid the Court in deciding this case.

## ISSUES PRESENTED

I.      Did MOC conclusively prove that it is Lentz's "employer" under the Workers' Compensation Act, so as to be entitled to summary judgment under section 408.001(a)'s exclusive-remedy defense, when:

      a.      The Mewbourne companies maintain an arrangement categorizing all workers as employees of Mewbourne Holdings, not MOC and other Mewbourne subsidiaries;

      b.      It was Mewbourne Holdings, not MOC, that had the right to control Lentz and directed his activities at the time of his injuries; and

      c.      MOC's only involvement in Lentz's employment was to administer certain formalities on Mewbourne Holdings' behalf?

II.     Did Lentz's acceptance of workers' compensation benefits estop Plaintiffs from contending that MOC is not his employer for purposes of section 408.001(a)'s exclusive-remedy defense?

**INTRODUCTION**

One of the many benefits of doing business in Texas is that companies located here are generally free to manage their affairs however they choose, including the arrangements they make for handling their employees. Accordingly, when companies within a single corporate family share a worker, they have an unfettered right to decide for themselves which company should be considered that worker's "employer." And generations of Texans have understood that the law will generally respect these arrangements. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992) (per curiam); *Producer's Chem. Co. v. McKay*, 366 S.W.2d 220 (Tex. 1963). Courts consider these arrangements to be a critical factor, if not necessarily the sole and exclusive one, in deciding which company ought to bear the legal responsibilities, and enjoy the legal benefits, associated with being the worker's "employer."

The trial court in this case departed from these time-honored principles. In particular, it refused to respect just such an inter-company arrangement when it decided that MOC was entitled to the benefit of 408.001(a)'s exclusive-remedy defense. This ruling was inconsistent with summary-judgment evidence showing that only Mewbourne Holdings, and not MOC and its affiliates, was considered Lentz's "employer" under the Workers' Compensation Act. And contrary to the court's assumption, nothing would "estop" Plaintiffs from denying that MOC was

1

Lentz's employer. The court's summary judgment in favor of MOC must be reversed.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A.    The Mewbourne family of companies maintains an arrangement under which all workers are considered employees of Mewbourne Holdings, not subsidiaries like MOC.**

This case arises from the catastrophic injuries that William Bradley Lentz sustained while working on one of MOC's wells located on the McElroy Ranch in Upton County, Texas. (CR 1338–39) MOC is a member of the Mewbourne family of companies. Members of that corporate family have decided that the workers of the entire enterprise are to be considered employees of Mewbourne Holdings—and only Mewbourne Holdings. (Sealed CR 108) Those employees are then farmed out to Mewbourne Holdings' subsidiaries, which are considered to be "DBA"s of the holding company. (Sealed CR 76) They are responsible for day-to-day operations, but have no employees of their own. (*Id.*)

Mewbourne representatives have explained this arrangement to others both inside and outside the Mewbourne family of companies. When the Mewbourne companies sought to obtain workers' compensation insurance before Lentz's accident in July 2015, their representatives explained this arrangement to York, the auditor for their workers' compensation carrier, Starr Indemnity & Liability Co. ("Starr"). In audit interviews conducted before Lentz's injury, Mewbourne

2

Holdings' employees told York that "Insured [Mewbourne Holdings] owns several other corporations, trusts, and LLC's. *These companies do not have any employees*." (Sealed CR 58, 108, emphasis added) And Mewbourne reported that several of MOC's executives, including Monty Whetstone, Vice-President of Operations, and Ken Waits, MOC's CEO, were on Mewbourne Holdings' payroll. (Sealed CR 11; RR 11) It supported those representations with payroll records and general ledgers substantiating the arrangement, making Mewbourne Holdings the sole employer of all workers in the Mewbourne family of companies. (Sealed CR 58, 114; RR 40–41)

This arrangement is also reflected in the coverage that the Mewbourne companies obtained from Starr, which listed Mewbourne Holdings as the sole "employer" for purposes of the policy and MOC as only an additional "named insured." (Sealed CR 147 at 1 (referring to "the *employer* named in Item 1," emphasis added); *id*. at 129, Information Page (listing "Mewbourne Holdings, Inc." in Item No. 1); *id*. at 148, Named Insured Schedule) Further, in a "Loss Control Site Survey Evaluation" that Mewbourne representatives completed after the policy went into effect, they stated that Mewbourne Holdings controlled all operations, and that MOC was merely a "DBA." (Sealed CR 59, 76) And after Lentz's accident, Mewbourne sent Starr a wage statement, listing Lentz as an employee of

3

"Mewbourne Holdings, Inc.," not MOC. (Sealed CR 330) Notably, that wage statement certified that it was accurate under risk of criminal penalty. (*Id.*)

The arrangement under which Mewbourne Holdings served as the sole employer was also explained to the workers within the Mewbourne family of companies. Defendants produced several copies of the workers' compensation notices they were required to post under Texas Workers' Compensation Rule 110.101(e)(1) for each policy period between 2014 and 2016. (Sealed CR 225 [2013–2014 policy], 228 [2014–2015 policy], 231 [2015–2016 policy]) They also produced copies of a similar notice required by the U.S. Department of Labor's Office of Workers' Compensation Programs. (Sealed CR 234, 236) Each of these notices identified "Mewbourne Holdings, Inc." as the statutory "employer," and informed employees that they should notify "Mewbourne Holdings, Inc." in the event they were injured on the job.

Finally, the arrangement is reflected in communications that Mewbourne representatives had with the Texas Department of Insurance's Office of Workers' Compensation after Lentz's injuries. In July 2015, Mewbourne Holdings filled out a report for the Office of Workers' Compensation informing it of Lentz's injury—which was to be provided by his "Employer[]"—in which Mewbourne Holdings identified itself by its Tax ID number and referred to Lentz as its "employee." (Sealed CR 301–02, 332) Although the version of that report in the record is not

4

signed, it must have been transmitted to the Office of Workers' Compensation, because in December 2015, a representative from the office wrote back, stating that it had received the notice of Lentz's injury and identifying "Mewbourne Holdings" as Lentz's employer. (Sealed CR 238)

Accordingly, Mewbourne representatives maintained a consistent stance—to internal personnel, to Mewbourne's insurer and insurance auditor, and to state workers' compensation administrators—that for all legal purposes, all workers would be employees of Mewbourne Holdings. Although subsidiaries like MOC had no employees, they still had a role in day-to-day operations, including administering certain formalities of employment on behalf of Mewbourne Holdings such as maintaining employment records, paying wages, providing benefits, and issuing tax preparation documents. (CR 876, 881, 1292, 1295, 1298, 1300, 1307, 1309) But at all times, everyone who worked for a Mewbourne subsidiary was actually a Mewbourne Holdings employee, and the right to control operations—and all employees—remained solely with Mewbourne Holdings.

### B. Lentz is injured while under the direction of Mewbourne Holdings' employees.

On the day when Lentz was injured, he reported exclusively to employees of Mewbourne Holdings—because MOC had no employees that he could have reported to—and he was subject to the exclusive control of Mewbourne Holdings, not MOC. And when he walked over to a battery to observe the cleaning process on one of

MOC's wells, he was sent by a Mewbourne Holdings employee, his on-site supervisor, Barrett Smith. (CR 1281)

Before the day of the injury, MOC had engaged Panther Completion Services, LLC to clean paraffin wax that had built up on the inside of the 8,500-foot wellbore. *(*CR 1334–35) Panther's cleaning process employed a mixture of hydrogen peroxide and potassium permanganate as a cleaning solution, which is particularly ill-suited for use around the highly flammable hydrocarbons found in oil wells. (CR 1335–36) The combination of these ingredients creates a reaction that produces intense heat and pressure, which may be useful for cleaning away paraffin wax, but also increases the risk that an explosion will occur. Worse, the reaction has a dangerous byproduct—it produces extra oxygen that creates a highly flammable atmosphere. (CR 1336)

While Panther was cleaning the well on the McElroy Ranch, Barrett sent Lentz over to a nearby battery where he could measure the flow to see if the cleaning process was working. (CR 1286, 1338) Moments after Lentz arrived at the battery, an explosion occurred and the wellhead caught fire. (CR 1339) Lentz suffered second- and third-degree burns over 70 percent of his body. (*Id.*) He endured more than 23 months of intensive medical care, incurring over $2,000,000 in medical expenses. (*Id.*) He is now blind in both eyes. (*Id.*) And he can only walk short distances—and even then, with considerable assistance. (*Id.*)

6

**C. The trial court decides that MOC is entitled to section 408.001(a)'s exclusive-remedy bar, holding that MOC—not Mewbourne Holdings—is Lentz's "employer."**

Lentz and his family members brought suit against Panther, MOC, Mewbourne Holdings, and several other parties for their negligence in causing the explosion and his severe injuries. (CR 2) The Mewbourne Defendants filed a traditional and no-evidence motion for summary judgment. (CR 84) As to MOC, they made an argument that was directly contradictory to their accounting arrangements, as well as their representations to employees, insurers, and the Workers' Compensation Commission: They claimed that it was MOC, *not* Mewbourne Holdings, that was Lentz's "employer," and thus it was MOC that was entitled to the workers' compensation exclusive-remedy defense in section 408.001(a) of the Texas Labor Code. (CR 91–94) The Mewbourne Defendants argued that MOC's assumption of administrative formalities relating to Lentz's employment, along with the self-assessments of several Mewbourne workers who thought they were MOC employees, should be conclusive evidence that Lentz's employer was MOC. (CR 92, 866, 867, 1272–73) They also maintained that Plaintiffs were estopped from claiming otherwise because of Lentz's acceptance of workers' compensation benefits. (CR 96–98)

Yet the Mewbourne Defendants' position began to change after Plaintiffs responded to their summary-judgment motion. When confronted with Plaintiffs'

7

response, which laid out the conflicts between the Defendants' summary-judgment argument and the evidence of their inter-company arrangement that made Mewbourne Holdings the sole employer, they ceased claiming that MOC was Lentz's sole employer. Instead, at the summary-judgment hearing, they shifted tactics and conceded that Mewbourne Holdings *could* be considered Lentz's employer. (RR 23-24) But relying on *Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238 (Tex. 2012) and *Wingfoot Enterprises v. Alvarado*, 111 S.W.3d 134 (Tex. 2003), they contended that Lentz's employment status was consistent with the dual-employment relationships found in those cases.[1] (RR 24, 46) Thus, they argued, Lentz's employment by Mewbourne Holdings was shared with MOC, such that MOC should be entitled to assert the workers' compensation exclusive-remedy defense in section 408.001(a).

The trial court granted summary judgment in favor of MOC.[2] It articulated its reasoning during the summary-judgment hearing. There, the court relied on the same cases as the Mewbourne Defendants. But under its read of "the case law," the court concluded that it was required to focus on the facts "on the ground at the work

---

[1] In the reporter's record, references to *Wingfoot v. Alvaredo* are mistakenly transcribed as "Wineberg" or "Soberano." (RR 36, 42, 46–47)

[2] The court also granted summary judgment in favor of Mewbourne Holdings. (CR 1116) Plaintiffs did not then and are not now contesting that disposition because they acknowledge that Mewbourne Holdings was Lentz's employer, and therefore is entitled to the exclusive-remedy defense.

site"—*i.e.*, who was "controlling the means and manner of the workplace"—rather than the arrangements of "[a] parent company or [a] holding company or anything like that." (RR 38, 47–48)  And it concluded that the facts "on the ground" conclusively established that MOC was Lentz's employer.  (CR 47)  It further credited the Mewbourne employees' self-assessment that they were MOC employees—despite recognizing that most of these employees had no awareness of Mewbourne Holdings' arrangement retaining control over all employees, or any understanding of the Mewbourne family's corporate structure.  As the court noted, "whether they have knowledge of holding companies or parent companies" or not did not render their testimony "incompetent vis-à-vis what's going on at the well site." (RR 39)

The trial court then gave a further reason for ignoring the arrangement between Mewbourne Holdings and MOC: It credited the testimony of a representative from Mewbourne's workers' compensation insurer, Starr, who claimed he simply listed Mewbourne Holdings as the "employer" in the policy to save room on the form.  (RR 27–28, 48)  Based on these facts "on the ground at the work site," the court concluded that "Mewbourne Oil Company" was "the employer at the time of the accident." (RR 47–48)

Further, the trial court held that Plaintiffs should be barred from recovering against MOC based the affirmative defense of quasi-estoppel because Lentz had

9

accepted workers' compensation benefits, concluding that this was an "additional ground" to grant summary judgment in favor of MOC. (RR 48)

## SUMMARY OF THE ARGUMENT

The trial court erred twice in granting summary judgment for MOC—with both errors stemming from its decision to ignore the arrangement between MOC and Mewbourne Holdings that made Lentz solely an employee of Mewbourne Holdings. For half a century, courts have understood that such inter-company arrangements are among the best possible evidence of a worker's employment status, because they show concretely how the companies plan to divide up the legal burdens and benefits of employing workers, and demonstrate the companies' decision-making among themselves about which entity would have the final say in asserting control over shared workers. And the trial court's conclusion that the arrangement was simply for the convenience of Mewbourne's insurer is only *one* possible explanation of *some* of the facts. That conclusion ignores Mewbourne Holdings' own internal accounting measures, along with numerous representations to employees, the insurance company and its auditor, and state agencies, all of which demonstrated that the arrangement reflected the economic realities of Mewbourne's business: that Mewbourne Holdings ultimately controls all operations, and subsidiaries like MOC are merely DBAs with no employees of their own. By picking and choosing among

10

the summary-judgment evidence, crediting the Mewbourne Defendants' evidence over Plaintiffs', the trial court reversibly erred.

The trial court further erred in concluding that the arrangement between Mewbourne Holdings and MOC had no effect on the "facts on the ground" about which company had the right to control Lentz. The arrangement at issue made everyone who worked with Lentz an employee of Mewbourne Holdings, not MOC—and that includes his direct reports, his supervisors at the job site, and Barrett Smith, the supervisor who directed him to perform the tasks that led to his catastrophic injuries.

This result cannot be changed simply because those workers—even Lentz himself—may have thought they worked for MOC. Under Texas law, such self-assessments cannot create a right of control where no such right exists. Moreover, because the workers gave no explanation for their belief that they were MOC employees, and thus supplied the court with no facts that would help it evaluate the legal basis for their belief, their testimony was not competent summary-judgment evidence. And the Mewbourne Defendants provided no other evidence that even suggested MOC was Lentz's employer, much less conclusively established that it was.

Finally, the trial court's errors in interpreting the summary-judgment evidence cannot be saved by invoking the affirmative defense of quasi-estoppel. While Lentz

11

indisputably received workers' compensation benefits for the injuries he suffered, he received those benefits under a single policy that covered both MOC and Mewbourne Holdings. Thus, his acceptance of benefits under that policy is not an admission as to which company—between the two—was his statutory employer. Lentz's acceptance of those benefits therefore does not "estop" Plaintiffs from contending that Mewbourne Holdings is his statutory employer, and the authorities Defendants relied on to support their estoppel argument are inapposite.

## ARGUMENT

### I. Standard of Review.

Because the Mewbourne Defendants moved for traditional summary judgment based on their affirmative defenses of exclusive-remedy and quasi-estoppel, they are in the same position as a plaintiff seeking summary judgment on multiple claims.[3] *Pollard v. Hanschen*, 315 S.W.3d 636, 638–39 (Tex. App.—Dallas 2010, no pet.). The inquiry on appeal is the same as the inquiry at trial—whether Defendants met their burden of expressly presenting and conclusively proving "all essential elements" of one or more of their affirmative defenses "as a

---

[3] The Mewbourne Defendants' summary-judgment motion also raised no-evidence points. (CR 103) But the only no-evidence points concerned the Plaintiffs' claims against Mewbourne Holdings, which are not at issue in this appeal. Accordingly, the only relevant standard of review is the one governing a traditional summary-judgment motion.

matter of law." *City of Houston v. Clear Creek Basin Auth., * 589 S.W.2d 671, 678 (Tex. 1979); *see also Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989).

The burden of raising genuine issues of material fact did not shift to Plaintiffs—meaning that they had no burden to respond—unless and until Defendants first met their initial burden. *Casso*, 776 S.W.2d at 556; *City of Houston*, 589 S.W.2d at 678. Accordingly, on appeal, Plaintiffs can raise complaints that "the grounds expressly presented to the trial court by the movant's motion are insufficient [a]s a matter of law to support the summary judgment," regardless of the grounds for denying the motion that Plaintiffs presented to the trial court. *City of Houston*, 589 S.W.2d at 678. Moreover, even if Defendants met their initial summary-judgment burden, the summary judgment against Plaintiffs still must be reversed if genuine issues of material fact exist on MOC's exclusive-remedy and quasi-estoppel affirmative defenses. *Torres v. Western Cas. & Sur. Co.*, 457 S.W.2d 50, 52–53 (Tex. 1970).

In determining whether material fact issues exist, a court must indulge every reasonable inference in favor of Plaintiffs and resolve any doubts in their favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). The appellate court may consider "only the evidence before the trial court at the time of the summary judgment motion hearing." *Parkchester Holdings, Inc. v. Carrier Corp*., No. 05-04-00912-CV, 2005 WL 995357, at *2 (Tex. App.—Dallas Apr. 29, 2005, no pet.).

13

Only issues expressly presented to the trial court by written motion, answer, or other response may be considered on appeal. TEX. R. CIV. P. 166a(c); *City of Houston*, 589 S.W.2d at 677. And "summary judgment cannot be affirmed on a ground not specifically presented in the motion for summary judgment." *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex. 1992).

Conclusory evidence—that which "does not provide the underlying facts to support the conclusion"—is incompetent summary-judgment evidence. *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (op. on rehr'g). Such evidence is substantively defective, is insufficient to eliminate fact issues, and amounts to no evidence to support a summary judgment. *See Coastal Transp. Co. Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232–33 (Tex. 2004).

## II. The Trial Court Erred in Concluding that MOC Was Entitled to Summary Judgment on Its Exclusive-Remedy Defense Under TEX. LABOR CODE § 408.001(a).

The central flaw in the trial court's grant of summary judgment stems from its failure to recognize the relevance of the arrangement under which Mewbourne Holdings is considered the sole employer for all workers in the Mewbourne family of companies. That arrangement is critical in understanding Lentz's employment status—which is based on evidence of a right to control that courts are bound to respect, and juries are required to consider, in evaluating any question regarding a

14

worker's employment status. The trial court's disregard of that arrangement also caused it to misread the "facts on the ground" by overlooking the practical consequence of that arrangement: Only Mewbourne Holdings had the right to control Lentz, because only Mewbourne Holdings had employees capable of controlling Lentz. Compounding these errors, the court considered the Mewbourne Defendants' evidence to be conclusive even though it not only conflicted with the controlling arrangement, but also relied on conclusory, incompetent, and made-for-litigation opinions that cannot support the summary judgment in favor of MOC.

A. **MOC Did Not Conclusively Establish that Lentz Is Its "Employee" for Workers' Compensation Purposes.**

Under the workers' compensation system in Texas, companies that subscribe to approved workers' compensation insurance plans are entitled to immunity from any tort claims that their workers might assert against them for workplace injuries. TEX. LABOR CODE § 408.001(a) (providing that workers' compensation benefits are "the exclusive remedy" for an injured employee covered by workers' compensation insurance). But subscribing to a workers' compensation plan is only one of the requirements a company must meet to obtain this exclusive-remedy bar. As the Mewbourne Defendants admitted in the court below, the company must also prove that "it was the workers' employer within the meaning" of the Texas Workers' Compensation Act. (CR 91, citing *W. Steel Co. v. Altenburg*, 206 S.W.3d 121, 123 (Tex. 2006)).

15

Only those companies that meet the statutory definition of "employer" receive this immunity.[4]  Injured workers remain free to sue any other "third party" that "becomes liable" for the workers' injuries.  TEX. LABOR CODE § 417.001(a).  And that is true whether the third party is a co-worker, an independent contractor, or—as Defendants have admitted (CR 99–100 & n.10)—a parent or subsidiary of the company that subscribed to the workers' compensation policy.  Indeed, it makes no difference whether the third party maintains workers' compensation coverage for *its own* employees, because maintaining such coverage is only one of the requirements for obtaining the workers' compensation exclusive-remedy bar.

Thus, in order to obtain summary judgment on its affirmative defense that workers' compensation was Plaintiffs' exclusive remedy, MOC had to conclusively demonstrate that it was Lentz's employer for workers' compensation purposes.  But it did not and cannot meet that burden.  In this case, the evidence produced in discovery demonstrates that only one of the Mewbourne Defendants can meet the statutory definition of "employer."  And it is *not* MOC, as the Mewbourne Defendants maintain.  It is Mewbourne Holdings.

_____

[4] *See* TEX. LABOR CODE § 401.011(18) (defining "employer" as "a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage"); *id.* § 401.012(a) (defining "employee" as "each person in the service of another under a contract of hire, whether express or implied, or oral or written").

The Mewbourne Defendants and Plaintiffs both agree that the touchstone in that inquiry is "control": Determining the identity of Lentz's employer requires an evaluation of which company had the "right to control [Lentz] at the time of [his] injury." (CR 91–92, quoting *Pederson v. Apple Corrugated Packaging, Inc.*, 874 S.W.2d 135, 137 (Tex. App.—Eastland 1994, writ denied)). And Mewbourne Holdings' exclusive right of control over Lentz is shown in two separate ways— both traceable to the arrangement between Mewbourne Holdings and its subsidiaries, including MOC.

### 1. The Mewbourne companies' arrangement categorizing all workers as employees of Mewbourne Holdings is a relevant factor in determining the identity of Lentz's statutory employer.

Long before this lawsuit was filed, the Mewbourne Defendants decided that, between the two of them, Mewbourne Holdings rather than MOC would satisfy the statutory definition of "employer." That was true both for Mewbourne workers generally and for Lentz specifically, because Mewbourne Holdings is the only true operating company and MOC is merely a "dba" with no employees. While it might be considered unorthodox for a holding company to be considered the employer, it is a role that the Mewbourne Defendants' attorneys embraced at the summary-judgment hearing—where they acknowledged that Mewbourne Holdings *could* be considered Lentz's employer. (RR 23–24, 46) And it is an arrangement that is supported by ample summary-judgment evidence.

17

Specifically, the accounting records and payroll ledgers presented to the Mewbourne companies' insurance auditor demonstrate that their businesses were structured consistent with the arrangement that Mewbourne Holdings was the sole employer of all the workers in the Mewbourne family of companies. (CR Sealed CR 58, 114; RR 40–41) The evidence also shows that the Mewbourne Defendants communicated a repeated and consistent message about that arrangement to the workers' compensation insurer, to the workers, and to the Texas Workers' Compensation Commission. The Mewbourne Defendants made these representations about their inter-company arrangement while performing acts governed by the Workers' Compensation Act—obtaining approved workers' compensation coverage, satisfying workers' compensation regulatory requirements, and providing workers' compensation benefits to Lentz. The context of these acts makes clear that the Mewbourne Defendants were referencing the statutory definition of "employer" under the Worker's Compensation Act, not merely some non-technical layperson's notion of the term, when they identified Mewbourne Holdings as the sole employer. The Plaintiffs' evidence of this arrangement—made and recorded by the Mewbourne Defendants themselves—provides the only

competent, relevant evidence of the identity of Lentz's "employer" under the statutory definition—and the only evidence of "control."[5]

Under the common law, courts have considered inter-company arrangements like the one here to be one of the most important factors in determining the identity of a worker's employer—including in workers' compensation cases—as long as they reflect the economic reality of the companies' employment relationships. *See, e.g.*, *Perez*, 842 S.W.2d at 630 (holding that an agreement that one company had a right to control an employee "is a factor to be considered" in determining the identity of the employee's statutory employer under the Workers' Compensation Act). Indeed, such arrangements were once considered to be conclusive in determining the identity of the employer. *See Producer's Chem.*, 366 S.W.3d at 225; *see also Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433, 440–41 (Tex. App.—San Antonio 2001, pet. denied). And even though "assignment[s] of the right to control" between companies are no longer considered "dispositive"—at least when there is "conflicting evidence

---

[5] The reporter's record suggests that at one point during the summary-judgment hearing, Plaintiffs' counsel could not identify specific evidence "indicat[ing] that Mewbourne Holdings, Inc., had the right to control" Lentz. (RR 44) In context, counsel appeared to be suggesting that there was no direct documentary link between Mewbourne Holdings and Lentz; this comment came up in discussion about Lentz's employment application with MOC, and counsel indicated that Defendants had not produced any similar information for Mewbourne Holdings during discovery. (RR 43) Any spur-of-the-moment imprecision in counsel's statement does not negate or affect Plaintiffs' evidence of Mewbourne Holdings' control, especially when counsel elsewhere outlined Defendants' representations to the "Department of Insurance, Worker's Compensation Division and their own carrier, Starr," and argued that this evidence demonstrated Mewbourne Holdings' "right of control" over Lentz. (RR 34, 43-44)

19

as to which entity" has the right of control—such arrangements are still a relevant factor in the determination of which entity is the employer. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 544 n.92 (Tex. 2002). Thus, where such conflicting evidence exists, the arrangement is not disregarded as irrelevant—the determination is properly "left to the jury." *Id*.

This makes perfect sense. Evidence of such arrangements is far superior in demonstrating control than other, more indirect indicia that are considered in determining whether a right to control exists—such as which company pays the worker or provides the instrumenalities for the job. *See* RESTATEMENT (SECOND) OF AGENCY § 220(2). Such arrangements provide direct evidence about how the companies themselves treat their employees and how they manage their day-to-day affairs, and are thus are superior to other indicia from which such control can only be inferred.

Notably, neither the trial court nor the Mewbourne Defendants offered any legally sound reason to justify disregard of the arrangement making Mewbourne Holdings the sole employer. While the trial court relied on *Port Elevator*, 358 S.W.3d 238, and *Wingfoot*, 111 S.W.3d 134, to suggest that evidence about the "facts on the ground at the work site" should be considered to the exclusion of the inter-company arrangement at issue, neither case actually supports that notion. (RR 39) Both cases dealt with materially different factual circumstances, involving

20

arrangements under which staffing agencies lease their employees to other companies, which in turn exercise control over the details of the employees' work. And they stand for the unremarkable proposition that it is possible in such dual-employer situations for multiple companies to assert the workers' compensation bar for a single worker. *Port Elevator*, 358 S.W.3d at 242 (holding that "[a]n employee may have more than one employer within the meaning of the TWCA, and each employer who subscribes to workers' compensation insurance may raise the exclusive-remedy provision as a bar to claims about the injury."); *Wingfoot*, 111 S.W.3d at 134–35 (holding that there may be two employers, for purposes of the exclusive-remedy provision of the Workers' Compensation Act, when the provider of temporary workers furnishes a worker to a client that controls the details of the work at time the worker is injured). Accordingly, neither case does anything to undermine the 60 years of Texas precedent establishing the relevance of inter-company arrangements in determining the identity of a worker's statutory employer.

Indeed, both cases actually reaffirm the relevance of those arrangements. In *Wingfoot*, the Court explained that the employment status of a staffing-company worker could be affected by an "agreement between the provider of temporary workers and the client regarding workers' compensation coverage." 111 S.W.3d at 144. Similarly, *Port Elevator* implicitly recognized that such arrangements can affect employment status because it imposed limits on them—specifically, that

21

companies could not enter into arrangements that would circumvent the rule prohibiting employers from splitting their workforces (*i.e.* maintaining coverage for some employees but not for others). 358 S.W.3d at 243. But those limits are not applicable to the employment arrangement here.

Furthermore, the facts establishing dual employment in those cases are very different from the facts here. In both cases, the evidence of control by each employer was so strong as to go unchallenged by the plaintiffs. *Id.* at 242 ("[T]he parties agree that Casados was an employee of both Staff Force and Port Elevator…."); *Wingfoot*, 111 S.W.3d at 138 ("Alvarado concedes she is Tandem's employee for some purposes."). The only question in each case was whether such dual-employment relationships were recognized under the Labor Code, and in each case, the Court answered that question in the affirmative.

In this case, however, that issue is irrelevant because the trial court did not recognize the existence of any dual-employer situation. And the arrangement between MOC and Mewbourne Holdings does not suggest dual employment. Rather, that arrangement allows for only a *single* employer: Mewbourne Holdings, because the evidence shows that all workers in the Mewbourne family are employees of Mewbourne Holdings, and MOC has no employees of its own. In fact, if there is any uncertainty about whether a dual-employer situation exists, that does not render irrelevant the evidence contradicting any such dual-employer situation. It simply

makes the conflict between that arrangement and the "facts on the ground" a genuine issue of fact that should be "left to the jury." *St. Joseph*, 94 S.W.3d at 544 n.92. Accordingly, the trial court erred in concluding that *Port Elevator* and *Wingfoot* somehow precluded it from considering the arrangement between MOC and Mewbourne Holdings in determining the identity of Lentz's employer.

To be sure, the Mewbourne Defendants disputed the relevance of the arrangement making Mewbourne Holdings the employer. In particular, they suggested that the Eastland Court of Appeals' decision in *Pederson* signaled that the law had somehow changed to make evidence of such arrangements irrelevant. (CR 94) But *Pederson* signals no such change—nor could it, given the Supreme Court's reaffirmation of the relevance of similar arrangements in *Port Elevator* and *Wingfoot*. The Mewbourne Defendants also pointed out that the injured worker in *Pederson* relied on a "Payment of Compensation" claim form that identified "Staff Benefits, Inc." as the relevant "insured" and "employer"—a form they likened to the evidence of their inter-company arrangement. (CR 94) And they emphasized that *Pederson* rejected the relevance of that claim form when it held that "[t]he evidence *conclusively demonstrates*" that the workers' nominal employer, Apple Corrugated Packaging, "had the right to control" the injured worker. (*Id.*, quoting 874 S.W.2d at 137, emphasis in motion).

The Mewbourne Defendants are correct that *Pederson* rejected the relevance of the "Payment of Compensation" claim form, but the court did so for reasons that are not helpful to them here. Importantly, the injured worker in *Pederson* did not offer the claim form as evidence that Staff Benefits was actually her "employer"— indeed, she did not rely on the fact that the claim form listed Staff Benefits as the "employer" at all. Instead, she conceded that Apple Corrugated Packaging was her employer and had the right to control her, which is why the court found the evidence "conclusively demonstrated" that Apple Corrugated Packaging satisfied the second requirement for the exclusive-remedy bar. 874 S.W.2d at 136–37. The plaintiff actually relied on the claim form only to refute the *first* requirement for the bar: She contended that because Staff Benefits, not Apple Corrugated Packaging, was listed as the "insured" on the claim form, that meant Apple Corrugated Packaging did not have "workers' compensation insurance coverage." *Id*. at 137. But the court rejected her argument because Apple Corrugated Packaging established that it *did* have workers' compensation insurance—it simply carried that coverage through "an 'arrangement'" with Staff Benefits. *Id*. And that holding has no bearing on this case, where the first requirement is not at issue and where the Mewbourne Defendants' own representations disprove their argument that MOC is Lentz's "employer" for purposes of the second requirement. Thus, *Pederson* gave the court

24

below no basis for disregarding Plaintiffs' evidence of the arrangement that made Lentz solely an employee of Mewbourne Holdings.

Nor, for that matter, did the Mewbourne Defendants conclusively negate Plaintiffs' evidence of Mewbourne Holdings' arrangement with its subsidiaries like MOC. The Mewbourne Defendants offered the testimony of their corporate representative, Drew Greene, who claimed that Mewbourne Holdings, rather than MOC, is actually the shell—that it is "solely a holding company" with no employees of its own. (CR 88, 109) But because Greene's made-for-litigation opinion conflicts with Defendants' previous representations to the workers' compensation insurer, the insurer's auditor, and to the State of Texas about how the Mewbourne companies had structured their employment affairs, it can only create an issue of fact for the jury to resolve. Thus, Greene's testimony cannot provide a basis to uphold the summary judgment in MOC's favor.[6]

Similarly, the testimony of a single representative from Mewbourne's workers' compensation insurer—Les Lappe—does not conclusively support the Defendants' argument that Mewbourne Holdings was designated as employer

---

[6] Defendants insist that some of the representations they made evidencing the arrangement were made by mistake, or were made by Starr without Defendants' input. (*E.g.*, CR 291, 353) Indeed, Defendants even sought—after Plaintiffs filed their summary-judgment response—to revise some of these representations to designate MOC, rather than Mewbourne Holdings, as Lentz's statutory employer. But Defendants did not try to challenge or correct *all* of their representations, many of which have remained unchanged for several years. And in any event, a jury could reasonably find that the revisions reflect litigation strategy rather than economic reality.

merely for convenience. (RR 27–28, 48) For one thing, Lappe's testimony pertained only to the decision to list Mewbourne Holdings as the "employer" in the workers' compensation insurance policy. (RR 27–28) His testimony does not—and cannot—negate Mewbourne's numerous other representations *outside* the policy, made by Mewbourne representatives with personal knowledge of the Mewbourne companies' operations, who claimed that all workers were employees of Mewbourne Holdings. Nor can it undermine the evidence proving the truth of the economic reality behind those representations: that Mewbourne Holdings controlled all operations, and that its subsidiaries were merely "DBA[s]" of the holding company that "do not have any employees." (Sealed CR 108) Accordingly, the trial court erred by giving conclusive weight to one piece of information that was too incomplete and inconsistent to serve as a basis for granting summary judgment in MOC's favor.

Finally, to the extent any of the Defendants' counterveiling evidence should carry any weight in determining the identity of Lentz's employer, it cannot negate the Plaintiffs' evidence of the arrangement making Mewbourne Holdings the sole employer of Lentz. At best, Defendants' evidence only makes the picture more murky, and raises fact issues for a jury to resolve. Accordingly, at the very least, Plaintiffs' evidence of the arrangement between Mewbourne Holdings and MOC raised a genuine issue of material fact that Mewbourne Holdings—and only Mewbourne Holdings—was Lentz's employer. And that evidence precluded the

26

grant of summary judgment in MOC's favor on the exclusive-remedy defense. *Roberts v. Davis*, 160 S.W.3d 256, 261 (Tex. App.—Texarkana 2005, pet. denied) (holding that genuine issues of material fact precluded summary judgment on defendants' limitations defense).

### 2. It was Mewbourne Holdings, not MOC, that had the right to control Lentz and directed his activities at the time of his injuries.

A second, more practical consequence of the arrangement between Mewbourne Holdings and its subsidiaries is that it made every worker who served MOC an employee of Mewbourne Holdings, whether they knew it or not. That means everyone to whom Lentz reported—Barrett Smith, his on-site supervisor, Monty Whetstone, the Vice-President of Operations, and Ken Waits, the President and CEO—were Mewbourne Holdings employees. (RR 11) Thus, every person with the right to control Lentz's activities was a Mewbourne Holdings employee. And it was a Mewbourne Holdings employee who also had *actual* control over Lentz's activities at the time of his injuries, because it was Barrett Smith who ordered him to go over to the battery to see if the tank-cleaning process was working, thus bringing him within the blast radius of the explosion. (CR 1286; RR 11) By contrast, MOC had no right to control Lentz at all, because it had no employees who could control him. And that means the control "on the ground" rested exclusively with Mewbourne Holdings, not MOC.

27

In similar situations, cases applying Texas law have held that a company could not be considered the employer of a worker who was under the sole direction of another employer's agents. Thus, in *St. Joseph*, the Texas Supreme Court held that a teaching hospital was not the employer of a resident who was supervised by physicians who worked for a foundation, because the resident "was subject to the Foundation's direction and control as to the details of his patient treatment while he was on rotation" at the teaching hospital. 94 S.W.3d at 542. And in *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998), the Fifth Circuit Court of Appeals relied on the fact that a military doctor's supervising physicians were independent contractors of a hospital as one reason to hold that doctor was not a borrowed servant of the hospital. Applied here, these cases support Plaintiffs' argument that MOC could not be Lentz's employer because the individuals who directed him were employees of Mewbourne Holdings, not MOC.

In concluding otherwise, Defendants and the trial court both relied on the testimony of a number of individuals who believed they were MOC employees, and based on that belief, asserted that Lentz was *also* an MOC employee. (CR 92) But none of this testimony actually established MOC's right of control over Lentz. Several of these individuals admitted that they knew nothing about Mewbourne Holdings or the corporate structure adopted by the Mewbourne family of companies. (CR 347–48, 352) Thus, they could not competently testify about how those

28

companies allocated employees for workers' compensation purposes. And none of them offered any facts to show how MOC supposedly controlled Lentz, or stated the factual basis for their conclusory belief that Lentz was an MOC employee. Indeed, from the bare testimony of these witnesses, it is impossible to tell whether they were using the Workers' Compensation Act's definition of "employer" or taking into account the relevant factors that go into determining the identity of an employer. Accordingly, despite what the trial court concluded, this testimony consists of nothing but bare legal opinions, and it is insufficient to support a grant of summary judgment for MOC. *Haynes*, 35 S.W.3d at 178.

Indeed, although Defendants emphasized that Lentz reported to one person, Barrett Smith, who himself claimed to be an MOC employee (CR 92), that still does not establish that MOC controlled Lentz because there is no reason to conclude that Smith *himself* was correct. Smith's testimony about his own employment status is as conclusory and incompetent as his testimony about Lentz's, and it cannot be reconciled with Defendants' representation that MOC was merely a dba for Mewbourne Holdings and had no employees of its own. And the fact that Lentz was working at an MOC wellhead at the time of his injury also cannot establish the required right of control on the part of MOC (CR 93), because MOC had no employees that could have been giving him direction at the site, making the location irrelevant.

Nor is it dispositive, or even relevant, that Lentz himself was among those who identified MOC as his employer. (*E.g*., CR 92) As the Texas Supreme Court has held, "an employee should not be placed in the position of trying to determine, perhaps at his or her peril, which of two entities was his or her employer." *Wingfoot*, 111 S.W.3d at 143. This is especially true for Lentz, who had no familiarity with either Mewbourne's corporate structure or the statutory definition of "employer" under the Workers' Compensation Act, and could only ascertain his employment status by relying on second-hand information from others who had an equally infirm grasp on their own employment status. (Sealed CR 46) Accordingly, neither Lentz's testimony about his own employment status, nor other workers' testimony about theirs, can be considered conclusive or dispositive summary-judgment proof in support of MOC's exclusive-remedy defense.

### 3. The fact that MOC administered some of the formalities of Lentz's employment on Mewbourne Holdings' behalf does not conclusively establish MOC was his employer.

Defendants did not offer any other evidence that conclusively established MOC to be Lentz's employer. Instead, they pointed to Lentz's W-2s, direct-deposit slips, and application for employment, all of which listed MOC as his employer. (CR 876, 881, 1292, 1295, 1298, 1300, 1307, 1309) But the mere fact that MOC administered these formalities of Lentz's employment does not conclusively establish that MOC actually had a "right to control" Lentz.

30

For one thing, all of this information was filled out by workers who did not understand their own employment status, let alone Lentz's. For another, the fact that MOC maintained these formalities on Mewbourne Holdings' behalf says nothing about whether it could control Lentz's activities—something that was impossible as both a practical and legal matter based on the evidence that Mewbourne Holdings maintained all control and ceded none to subsidiaries like MOC. At best, the W-2s, deposit slips, and employment application merely show that Defendants themselves were inconsistent in identifying Lentz's employer, especially for workers' compensation purposes. But proving an inconsistency is a far cry from offering the conclusive evidence required for summary judgment in favor of MOC on its exclusive-remedy defense.[7]

In short, the most that can be said about these administrative documents is that they might provide *some* evidence that MOC was an employer of Lentz. But given the other evidence demonstrating that Mewbourne Holdings was the sole employer of all workers in the Mewbourne family of companies, these documents merely raise

---

[7] Defendants exhibited a similarly inconsistent approach in their dealings with OSHA following Lentz's accident. At first, they led OSHA to assume that Mewbourne Holdings would be the entity that would receive the citation, although the citation was eventually issued to MOC. (CR 93) But then MOC, rather than Mewbourne Holdings, entered into a settlement agreement with the Department of Labor withdrawing the citation and identifying MOC as the entity responsible for any remedial action. (CR 93, 382) Regardless, these dealings with OSHA have only tangential relevance in determining the identity of Lentz's employer for workers' compensation purposes.

a genuine issue of material fact as to whether MOC is or is not Lentz's employer. Accordingly, Defendants did not conclusively establish that MOC is entitled to the exclusive-remedy bar, and the summary judgment in MOC's favor must be reversed. *Roberts*, 160 S.W.3d at 261.

**B.  Lentz's Acceptance of Workers' Compensation Benefits Does Not Estop Plaintiffs from Denying that MOC Is Lentz's Statutory Employer.**

The trial court's decision to grant summary judgment based on the Defendants' alternative affirmative defense of "quasi-estoppel" is equally flawed. (RR 48)  According to Defendants, Lentz's acceptance of workers' compensation benefits "from Starr under the Starr policy" bars Plaintiffs from "recovering against MOC for negligence," purportedly because he knew MOC was covered under the policy. (CR 96–98)  But these assertions do not establish grounds for quasi-estoppel, and they certainly do not allow MOC to avail itself of the exclusive-remedy bar through the back door of a different defense.

For one thing, Defendants admitted that quasi-estoppel only prevents a party from asserting a position "inconsistent with a position previously taken" when doing so would cause another to suffer such "disadvantage" that it would be "unconscionable" for the party to maintain the inconsistent position.  (CR 96, quoting *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)) Even if Lentz accepted his workers' compensation benefits under the assumption

that they were being provided by MOC rather than Mewbourne Holdings, the Mewbourne Defendants cannot identify any "disadvantage" they suffered because of that assumption. In fact, they admitted that both MOC and Mewbourne Holdings are covered under the same Starr policy. (CR 88 n.1, citing Ex. 4 [CR 135]) Defendants thus cannot claim that Lentz lured them into providing benefits they otherwise would have withheld had they known he would sue MOC for negligence; either MOC or Mewbourne Holdings would have provided him benefits *regardless* of which one of them was actually his employer. Indeed, because the benefits were ultimately provided by Starr, not the Mewbourne Defendants themselves, they cannot claim to have suffered any disadvantage at all from the benefits Lentz received. Accordingly, Defendants failed to establish even the basic elements of "quasi-estoppel" in this case.

Equally important, there is nothing "inconsistent" between Lentz's acceptance of benefits under the Starr policy and Plaintiffs' decision to assert negligence claims against MOC. Because Lentz received those benefits under a single policy that covered both MOC and Mewbourne Holdings, his acceptance of benefits under that policy is not an admission as to which company—between the two—was his statutory employer. Indeed, because the benefits were paid by Starr, and his checks from Starr identified "Mewbourne Holdings" as the insured (Sealed CR 46, 47), it is entirely *consistent* for him to accept workers' compensation benefits under the

33

assumption they were being provided by Mewbourne Holdings—thus leaving Plaintiffs free to assert claims against MOC as a third party. And Plaintiffs have acted consistent with that position throughout this case.

Finally, the fact that this case involves a single policy covering two companies, and the controversy lies in determining which of those two companies is the statutory employer, makes this case very different from *Little v. Delta Steel*, 409 S.W.3d 704 (Tex. App.—Fort Worth 2013, no pet.), on which Defendants relied. (CR 96) *Delta Steel* did not involve multiple potential employers covered under a single policy. It did not even involve a dispute over whether the defendant met the statutory definition of an "employer" for workers' compensation purposes. As Defendants acknowledged, the plaintiffs in that case "conced[ed] that Delta Steel was the employer" (CR 93), and thus the true controversy involved the first requirement for the exclusive-remedy bar—whether the employer had workers' compensation insurance coverage. The court concluded that the injured employee's acceptance of benefits estopped her from denying that her employer maintained workers' compensation insurance coverage. *Delta Steel*, 409 S.W.3d at 713–14.

That decision was undoubtedly correct—it makes perfect sense that an injured worker's acceptance of workers' compensation benefits would estop him from denying that his employer is covered by workers' compensation insurance. But an injured worker's acceptance of benefits is *not* an admission that one particular

34

company among several is the worker's statutory employer, when all of the potential employers are covered under a single policy. Nothing in *Delta Steel* suggests otherwise. Accordingly, Lentz's acceptance of workers' compensation benefits does not estop Plaintiffs from denying that MOC is his statutory employer, and summary judgment should not have been granted based on that defense.

## PRAYER

For the foregoing reasons, Plaintiffs have raised genuine issues of material fact as to the identity of Lentz's workers' compensation employer that can only be resolved by a jury. Further, Plaintiffs are not estopped from denying that MOC is Lentz's statutory employer. Accordingly, the trial court's order granting summary judgment in favor of MOC must be reversed.

Respectfully submitted,

*/s/ Jeffrey S. Levinger*

**Omar G. Alvarez**
State Bar No. 24045402
ogalvarez@ogalvarezlaw.com
**O.G. Alvarez &**
  **Associates, P.C.**
21022 Gathering Oak
San Antonio, TX 78260
Tel.: 210-354-3900
Fax: 800-948-7571


**Collen A. Clark**
State Bar No. 04309100
cclark@clarkmccrea.com
**Clark & McCrea**
3500 Maple Avenue,
Suite 1250
Dallas, TX 75219
Tel.: 214-780-0500
Fax: 214-780-0501

**Jeffrey S. Levinger**
 State Bar No. 12258300
 jlevinger@levingerpc.com
**J. Carl Cecere** (of counsel)
 State Bar No. 24050397
 ccecere@cecerepc.com
**Levinger PC**
 1700 Pacific Ave.,
 Suite 2390
 Dallas, TX 75201
 Tel: 214-855-6817
 Fax: 214-817-4509

*Attorneys for Appellants*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(B) because it contains 8,049 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2.      This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font (and 12 point for footnotes).

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of this Brief for Appellants was served on all counsel of record via the Court's electronic filing system on this 4th day of June, 2018.

David M. Gunn
Beck Redden LLP
1221 McKinney Ave., Suite 4500
Houston, TX 77010

Leonard Davis
Fish & Richardson P.C.
110 N. College Ave., Suite 1116
Tyler, Texas 75702

Thomas W. Paterson
Susman Godfrey L.L.P.
1000 Louisiana St., Suite 5100
Houston, Texas 77002-5096

John R. Mercy
MERCY ✶ CARTER, L.L.P.
1724 Galleria Oaks Dr.
Texarkana, TX  75503

Melinda D. Hamm
Cotton, Bledsoe, Tighe & Dawson, P.C.
P. O. Box 2776
Midland, Texas 79702-2776

Reagan L. Butts
Mewbourne Oil Company
3620 Old Bullard Rd.
Tyler, Texas 75701-8644

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

**APPENDIX**

Order Granting Mewbourne Oil Company and Mewbourne Holdings, Inc.'s Traditional and No-Evidence Motions for Summary Judgment (CR 1407–08) ...............................................................................................tab 1

Order Granting Defendants' Unopposed Motion for Severance and Entry of Final Judgment (CR 1418–19) ...............................................................................tab 2

# TAB 1

CAUSE NO. 67097-A

| | | |
|---|---|---|
| WILLIAM BRADLEY LENTZ;<br>BEVERLY LENTZ;<br>JASON LENTZ, M.D.; and<br>REBECCA VANLANDINGHAM | §<br>§<br>§<br>§<br>§ | IN THE COUNTY COURT |
| vs. | §<br>§ | AT LAW NO. 3 |
| PANTHER COMPLETION SERVICES, LLC;<br>JEREMY WILLIAMSON; MARCEAUX<br>ENERGY SERVICES, LLC; SANDY<br>MARCEAUX; GREEN MOUNTAIN<br>SERVICES, LLC; BRENNTAG SOUTHWEST,<br>INC.; CORPORTIVO QUIMICO GLOBAL;<br>STEALTH COMPLETION SERVICES, LLC;<br>JONATHAN JURADO; CACTUS RENTAL<br>EQUIPMENT, LLC; ROYDSTON V. HOUSE;<br>AARON MANGUM; ORGANIC SOLVENT<br>STEAM TREATMENT; NOVA d/b/a TRC<br>COMPANIES, INC.; MEWBOURNE OIL<br>COMPANY; and MEWBOURNE HOLDINGS,<br>INC. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SMITH COUNTY, TEXAS |

**ORDER GRANTING MEWBOURNE OIL COMPANY AND
MEWBOURNE HOLDINGS, INC.'S
TRADITIONAL AND NO-EVIDENCE MOTIONS FOR SUMMARY JUDGMENT**

On December 7, 2017, the Court heard Defendant Mewbourne Holdings, Inc.'s Traditional and No-Evidence Motions for Summary Judgment. After considering those Motions, the memorandum in support, Plaintiffs' response, Mewbourne Holding, Inc.'s reply, the summary judgment evidence admitted for consideration, and the arguments of counsel, the Court finds that Defendant Mewbourne Holdings, Inc.'s Traditional and No-Evidence Motions for Summary Judgment should be and are **GRANTED**.

**IT IS THEREFORE ORDERED** that Plaintiffs take nothing from Defendant Mewbourne Holdings, Inc. and all claims asserted by Plaintiffs William Bradley Lentz, Beverly Lentz, Jason Lentz, M.D., and Rebecca Vanlandingham against Mewbourne Holdings, Inc. are dismissed with prejudice.

1

5478481v1/015631

On December 7, 2017, the Court heard Defendant Mewbourne Oil Company's ("MOC") Traditional Motion for Summary Judgment ("MOC's Motion"). After considering MOC's Motion, MOC's memorandum in support, the response filed by Plaintiffs, MOC's reply, the summary judgment evidence admitted for consideration, and the argument of counsel, the Court finds that Defendant Mewbourne Oil Company's Motion for Summary Judgment should be and is **GRANTED**.

**IT IS THEREFORE ORDERED** that Plaintiffs take nothing against Mewbourne Oil Company, and all claims asserted by Plaintiffs William Bradley Lentz, Beverly Lentz, Jason Lentz, M.D., and Rebecca Vanlandingham against Mewbourne Oil Company are dismissed with prejudice.

**SIGNED** this the ___7th___ day of __December__, 2017.

_____
HONORABLE JUDGE PRESIDING

CC: C. CLARK, O. ALVAREZ, L. COTTEN, R. KERLICK, L. DAVIS, R. FAIRLESS, K. RIVAS AND M. KLAFF

2

5478481v1/015631

# TAB 2

CAUSE NO. 67097-A

| | | |
|---|---|---|
| WILLIAM BRADLEY LENTZ;<br>BEVERLY LENTZ; JASON LENTZ, M.D.;<br>AND REBECCA VANLANDINGHAM<br>    PLAINTIFFS, | §<br>§<br>§<br>§<br>§ | IN THE COUNTY COURT |
| V. | §<br>§<br>§ | AT LAW NO. 3 |
| PANTHER COMPLETION SERVICES,<br>LLC; JEREMY WILLIAMSON;<br>MARCEAUX ENERGY SERVICES, LLC;<br>SANDY MARCEAUX; GREEN MOUNTAIN<br>SERVICES, LLC; BRENNTAG<br>SOUTHWEST, INC.; CORPORTIVO<br>QUIMICO GLOBAL; STEALTH<br>COMPLETION SERVICES, LLC;<br>JONATHAN JURADO; CACTUS RENTAL<br>EQUIPMENT, LLC; ROYDSTON V.<br>HOUSE; AARON MANGUM; ORGANIC<br>SOLVENT STEAM TREATMENT; NOVA<br>D/B/A TRC COMPANIES, INC.;<br>MEWBOURNE OIL COMPANY; AND<br>MEWBOURNE HOLDINGS, INC.<br>    DEFENDANTS | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SMITH COUNTY, TEXAS |

## ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR SEVERANCE AND ENTRY OF FINAL JUDGMENT

On this day came on to be considered Defendants Mewbourne Oil Company and Mewbourne Holdings, Inc.'s ("Defendants") Unopposed Motion for Severance and Entry of Final Judgment and the Court, having considered same, finds that Defendants' Motion for Severance and Entry of Final Judgment should be granted.

It is, therefore, ORDERED, that Plaintiffs' claims and causes of action against Defendants, Mewbourne Oil Company and Mewbourne Holdings, Inc. and the Order Granting Defendants' Motions for Traditional and No-Evidence Summary Judgment are severed from this cause of action and shall be assigned Cause No. __67,732-b__ .

SIGNED this __4__ day of _____JAN._____, 2018.

_____
JUDGE PRESIDING

CC: C. CLARK, L. COTTEN, R. KERLICK, L. DAVIS, R. FAIRLESS, K. RIVAS AND M. KLAFF